**Felipe G. GARCIA–LOPEZ, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 90–2119.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 19, 1990.
Decided Jan. 23, 1991.

James Hallagan, Minsky, Feiertag, McCormick & Hallagan, Chicago, Ill., for petitioner.

Ira H. Raphaelson, U.S. Atty., Office of the U.S. Atty., A.D. Moyer, Michael L. Harper, I.N.S., Chicago, Ill., David J. Kline, Lori L. Szialabba, Richard L. Thornburg, U.S. Atty. Gen., Office of the U.S. Atty. Gen., Lisa Dornell, Dept. of Justice, Office of Immigration Litigation, Washington, D.C., for respondent.

Before POSNER, COFFEY, and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

On October 22, 1986, an Order to Show Cause was issued against Felipe Garcia–Lopez, alleging a violation of § 241(a)(2) of the Immigration and Nationality Act (entering the United States without inspection). 8 U.S.C. § 1251(a)(2). At the proceedings held on November 21, 1986, Garcia–Lopez admitted the allegation and conceded deportability, thereby establishing deportability by clear, convincing, and unequivocal evidence. 8 C.F.R. § 242.14(a). Garcia–Lopez then requested the relief of voluntary departure.

This is an appeal from a final order of deportation in which the Board of Immigration Appeals (BIA) upheld the denial of voluntary departure by the Immigration Judge (IJ). The sole issue on appeal is whether that denial constitutes an abuse of discretion.

## I. BACKGROUND

Felipe Garcia–Lopez is a native and citizen of Guatemala. He first came to the United States in 1968 on a tourist visa. He overstayed his visa and, after a hearing, was granted permission for voluntary departure in 1969. However, in 1970 he reentered the United States illegally and again in 1970 was permitted to depart voluntarily. During the deportation hearing on the present matter, Garcia–Lopez testified that he reentered this country illegally once again in 1974 and remained until sometime in 1979. On June 27, 1980, he returned to this country on a false U.S. passport in his name that he obtained by using a Puerto Rican birth certificate. He was deported on August 30, 1982. He returned illegally in November, 1982 because he was "ready

to get married" and has remained continually in this country since that time.

On November 23, 1983, Garcia–Lopez married Patricia Surita, a United States citizen, and has been married to her and living with her since that date. He is the step-father of Jean Matthews, Patricia's daughter, also a United States citizen. Since 1982, Garcia–Lopez has worked as a chauffeur for the Chicago Tribune.

After the marriage, Garcia–Lopez applied for permission to reenter the United States after deportation, but that application was denied, as was its appeal. In the meanwhile, his wife filed a petition for immediate relative visa status on his behalf. This petition was approved on December 23, 1985, but was withdrawn by his wife in 1986. The reason given for the withdrawal was that she was angry with him over some money matters after her cousin's death. She was under medical supervision for depression at the time and later forgot about the revocation. After the commencement of the present deportation proceedings in 1986, Patricia filed a second visa petition on her husband's behalf.

On May 27, 1987, the IJ denied Garcia–Lopez's request for voluntary departure and ordered his deportation. While this case was on appeal to the BIA, Garcia–Lopez acquired new equities in his favor. The visa application was approved. His brother had become a United States citizen, and his mother had been granted permanent resident status. He and his wife had established a newspaper delivery service. The BIA upheld the IJ's decision on November 29, 1989.

## II.  ANALYSIS

### A.  Standard of Review

■ A court of appeals has jurisdiction pursuant to 8 U.S.C. § 1105a(a) to review all final orders of deportation. *Oviawe v. INS*, 853 F.2d 1428, 1430 (7th Cir.1988). We review the Attorney General's discretionary denials for an abuse of discretion. *Hernandez–Patino v. INS*, 831 F.2d 750, 752 (7th Cir.1987). Our examination of the denial is limited to whether the discretion was actually exercised and whether it was exercised in an arbitrary or capricious manner. *Villanueva–Franco v. INS*, 802 F.2d 327, 329 (9th Cir.1986). Therefore, the BIA must show that it weighed all of the favorable and unfavorable factors and state its reasons for denying relief. *Becerra–Jimenez v. INS*, 829 F.2d 996, 1000 (10th Cir.1987). However, the BIA may give less weight to equities acquired after an order of deportation has been issued than to those acquired before the alien was found deportable. *Bothyo v. Moyer*, 772 F.2d 353, 357 (7th Cir.1985).

■ In reviewing a BIA decision, a court of appeals lacks the authority to determine the weight to be afforded each factor. *Sanchez v. INS*, 755 F.2d 1158, 1160 (5th Cir.1985). The rule in this circuit is that a denial by the BIA will be upheld unless: 1) it was made without a rational explanation; 2) it inexplicably departed from established policies; or 3) it rested on an impermissible basis such as invidious discrimination against a particular race or group. *Bal v. Moyer*, 883 F.2d 45, 46 (7th Cir.1989) (quoting *Achacoso–Sanchez v. INS*, 779 F.2d 1260, 1265 (7th Cir.1985)).

### B.  Voluntary Departure

After an order of deportation is entered, an alien may request merciful treatment by directing a motion to the Attorney General or to one of his delegates. *Bal*, 883 F.2d at 47. One avenue open to an alien adjudged deportable is Section 244(e) of the Immigration and Nationality Act, which allows the alien to seek voluntary departure in lieu of deportation. 8 U.S.C. § 1254(e). To be statutorily eligible for voluntary departure, the alien must show that he has the means to depart and has had good moral character for at least five years previously.[1] *Id.*

The award of voluntary departure has a number of distinct advantages: 1) it allows an alien to avoid the stigma of deportation;

---

1. The five-year period is not a statute of limitations, rather it is merely a threshold requirement for relief. *Villanueva–Franco*, 802 F.2d at 330.

2) it allows the alien to select his own destination; and 3) it facilitates the possibility to return to the United States. *Contreras–Aragon v. INS,* 852 F.2d 1088, 1090 (9th Cir.1988). Voluntary departure would allow Garcia–Lopez, who now has an approved visa petition, to return to the United States immediately. *Id.* As a deported alien, on the other hand, he will not be able to return to this country for five years, unless he obtains special permission. 8 U.S.C. § 1182(a)(17).

■ Voluntary departure, however, is a privilege, not a right. *Becerra–Jimenez,* 829 F.2d at 999. There is no entitlement to relief based on any objective criteria. *Achacoso–Sanchez,* 779 F.2d at 1264. Therefore, an agency may be either stern or generous in exercising its discretion. *Id.* at 1263. The alien carries the burden of demonstrating equities that merit the favorable exercise of discretion. *Hernandez–Patino,* 831 F.2d at 752. The denial of Garcia–Lopez's request for voluntary departure rested on discretionary grounds.

■ The gist of Garcia–Lopez's argument is that he was entitled to a favorable exercise of discretion and a grant of voluntary departure because he is married to a United States citizen and has substantial economic and family ties to this country. He contends that the BIA abused its discretion by departing from established precedents and policies of the Immigration and Naturalization Service by not placing proper weight on his favorable equities.

### C. Adverse Factors versus Favorable Equities

Because the BIA has legitimate concerns about the administration of the immigration laws, *INS v. Rios–Pineda,* 471 U.S. 444, 451, 105 S.Ct. 2098, 2103, 85 L.Ed.2d 452 (1985), an applicant for voluntary departure must offset any adverse factors by a showing of unusual or outstanding equities. *Elkins v. Moreno,* 435 U.S. 647, 667, 98 S.Ct. 1338, 1350, 55 L.Ed.2d 614 (1978)

(citing *Matter of Arai,* 13 I & N 494, 495 (BIA 1970)). "Generally, favorable factors such as family ties, hardship, length of residence in the United States, etc., will be considered as countervailing factors meriting favorable exercise of the administrative discretion. In the absence of adverse factors, adjustment will ordinarily be granted, still as a matter of discretion." *Id.* (quoting *Arai,* 13 I & N at 496).

Garcia–Lopez has equities in his favor. He points out that his violations of the immigration laws occurred many years ago; *see Becerra–Jimenez,* 829 F.2d at 999 (IJ did not give weight to deportation hearings in 1958 and 1968 because of long passage of time, but did consider an unlawful entry in 1975); he has not departed since 1982. He further points out that the humanitarian needs represented by the separation from his family members in the United States would create a hardship that weighs in favor of granting his request for voluntary departure.

The record indicates that the BIA considered all of the factors before it and carefully examined the IJ's reasoning before affirming the denial of voluntary departure. The IJ had considered the adverse factors, which consisted of Garcia–Lopez's repeated violations of the immigration laws, i.e., extending his stay beyond his tourist visa one time and entering the United States illegally four times, one time with a false passport. The favorable factors before the IJ were his United States citizen wife of six years [2] and stepdaughter, his gainful employment (albeit illegal), and the fact that he had no record of any convictions (though the IJ noted that he had been arrested twice for battery and disorderly conduct). The IJ determined that Garcia–Lopez had shown a "total and flagrant disregard for the immigration laws of this country" and concluded that the favorable factors did not outweigh Garcia–Lopez's unfavorable immigration history.

---

**2.** However, the IJ also commented that when his wife withdrew the application for immediate relative visa status, she told the Service that her husband had threatened her. The IJ noted that

the fact that his wife withdrew the petition and was absent from the deportation proceedings diminished the equities derived from the marriage. Order at 4.

The equities that were not before the IJ and which Garcia–Lopez acquired subsequent to the IJ's decision were before the BIA, but the BIA gave these newly acquired equities less weight. *Bothyo,* 772 F.2d at 357 (equities acquired after order of deportation entitled to less weight). Even considering all of the equities, the BIA concluded that those equities were outweighed by his violations of the immigration laws.

Dissatisfied with the administrative review of his case, Garcia–Lopez insists that the BIA has repeatedly given great weight to the hardship that the family will suffer because of the deportation. Therefore, he argues that the weight of the evidence in his case goes against the BIA's finding. In invoking humanitarian concerns, Garcia–Lopez cites cases which recognize the hardship imposed by the separation of family members.

First, not all of the cases to which he cites are voluntary departure cases. Second, the BIA clearly did consider the family members in the balancing of equities and adverse factors. Finally, contrary to Garcia–Lopez's contention, the BIA did not depart from established practices by giving more weight to a history of violations of the immigration laws than to the United States citizen family members and other favorable equities. *E.g., Hernandez–Patino,* 831 F.2d at 754–55 (examples of cases in which United States citizen family members did not satisfy statutory requirement for extreme hardship for suspension of deportation); *Carnejo–Molina v. INS,* 649 F.2d 1145, 1151 (5th Cir.1981) (two United States citizen children were not equities sufficient to overcome adverse factors for voluntary departure).

## III. CONCLUSION

This court is limited to reviewing this case for an abuse of discretion and may not assign its own weight to the various factors. *Sanchez,* 755 F.2d at 1160. The BIA considered all of the equities and balanced them against the adverse factors, giving a rational explanation for its decision. Because the BIA's discretion was not exercised in an arbitrary or capricious manner, there was no abuse of discretion.

The decision of the Board of Immigration Appeals is AFFIRMED.