947 F.2d 948
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Anton JUNKOVIC, Petitioner,
v.
A.D. MOYER, Director of the Immigration and Naturalization
Service, Respondent.
 No. 90-3749.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 2, 1991.
Decided Nov. 4, 1991.
 
 Before BAUER, Chief Judge, and CUMMINGS and WOOD, JR., Circuit Judges.
 
 ORDER
 
 1
 This is an appeal from a decision of the Board of Immigration Appeals ("BIA"), in which the BIA denied the request of Anton Junkovic for discretionary relief pursuant to section 212(c) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1182(c), and ordered him deported to Yugoslavia. We affirm the BIA's decision.
 
 BACKGROUND
 
 2
 Anton Junkovic is a native and citizen of Yugoslavia. He entered the United States at the age of six with his mother, father, and siblings on September 10, 1970 and became a permanent resident on September 10, 1972. At the time of the hearing, he was living with his parents and his sister, all permanent residents. He has a married sister who is a United States citizen. He works for his father, who owns a liquor/grocery store. He also works about 30 hours per week as a painter. He testified to being engaged to be married to a United States citizen.[1]
 
 
 3
 On July 1, 1986, the Immigration and Naturalization Service ("Service") issued an Order to Show Cause against Junkovic, alleging a violation of section 241(a)(4) of the Act on the basis of certified records of two state court convictions for burglary, a crime involving moral turpitude under the Act. 8 U.S.C. § 1251(a)(4); see Matter of Frentescu, 18 I & N Dec. 244, 245 (BIA 1982) ("[b]urglary with intent to commit theft is a crime involving moral turpitude"). At the proceedings held on August 29, 1986, Junkovic admitted the allegation and conceded deportability. The Immigration Judge ("IJ") thereby found that deportability was established by clear, convincing, and unequivocal evidence. Woodby v. INS, 385 U.S. 276, 286 (1966); 8 C.F.R. § 242.14(a).
 
 
 4
 Junkovic then applied for relief from deportation under section 212(c) of the Act. Though Junkovic was found to be statutorily eligible for section 212(c) relief, the IJ denied him the relief as a matter of discretion because, given his criminal history, it was too early to determine whether Junkovic's expressed rehabilitation was genuine. The BIA upheld the denial of relief of deportation, but gave as its reason the serious nature of the crimes of which Junkovic had been convicted. The sole issue on appeal is whether that denial constitutes an abuse of discretion.
 
 STANDARD OF REVIEW
 
 5
 This court has jurisdiction to review all final orders of deportation. 8 U.S.C. § 1105a(a). A final order is the decision of the BIA, not the IJ. Balazoski v. INS, 932 F.2d 638, 640 (7th Cir.1991). We review discretionary denials for an abuse of discretion, limiting our review to whether the BIA actually exercised its discretion and whether it exercised its discretion in an arbitrary or capricious manner. Garcia-Lopez v. INS, 923 F.2d 72, 74 (7th Cir.1991). The BIA must weigh all of the factors, both favorable and unfavorable, and then must state its reasons for denying relief. Id. A court of appeals does not have the authority to determine the weight to afford to each factor. Id. "[We] will uphold a denial by the BIA unless it was made without a rational explanation, it inexplicably departed from established policies, or it rested on an impermissible basis, e.g., invidious discrimination against a particular race or group." Cordoba-Chaves v. INS, No. 91-1339, slip op. at 3 (7th Cir. Oct. 22, 1991).
 
 SECTION 212(C)
 
 6
 Section 212(c) of the Act allows a lawful permanent resident who has resided in the United States for seven consecutive years but has been ordered deported to ask the Attorney General to waive the ground for deportability. Drobny v. INS, No. 90-3190, slip op. at 2-3 (7th Cir. Oct. 21, 1991). However, statutory eligibility does not automatically provide for an indiscriminate waiver of deportation. Matter of Buscemi, 19 I & N Dec. 628, 633 (BIA 1988). Rather, whether an alien merits relief under section 212(c) must be determined by the Attorney General as a matter of discretion, with the alien bearing "the burden of demonstrating that his application warrants favorable consideration." Matter of Marin, 16 I & N Dec. 581, 583 (BIA 1978).
 
 
 7
 The BIA has interpreted its own authority in exercising its discretion under the statute. Joseph v. INS, 909 F.2d 605, 606 (1st Cir.1990). "[T]he Attorney General balances the social and humane considerations in the alien's favor against any adverse factors that demonstrate his undesirability as a permanent resident in the United States." Cordoba-Chaves, No. 90-3749, slip op. at 4 (citing Matter of Edwards, Interim Decision 3134 at 6 (BIA 1990)). Factors favorable to the alien that the BIA considers include:
 
 
 8
 family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character.
 
 
 9
 Marin, 16 I & N Dec. at 584-85. Factors adverse to an alien's application for discretionary relief under section 212(c) include: "1) the nature and underlying circumstances of the exclusion ground at issue; 2) any additional significant violations of this country's immigration laws; 3) the nature, recency, and seriousness of a criminal record; and 4) any other evidence of an alien's bad character or undesirability as a permanent resident." Cordoba-Chaves, No. 90-3749, slip op. at 5 (citing Marin, 16 I & N Dec. at 584). One or more of these adverse factors may ultimately determine whether relief under section 212(c) will be granted or denied. Edwards, Interim Decision 3134 at 6. More serious negative factors require a heightened showing of favorable evidence, which may even have to involve unusual or outstanding equities. Buscemi, 19 I & N Dec. at 633.[2] Although a demonstration of outstanding favorable factors does not compel relief, "absent such equities, relief will not be granted in the exercise of discretion." Edwards, Interim Decision 3134 at 7 (where the adverse factors are very serious, a favorable exercise of discretion may not be warranted even though the equities are unusual or outstanding). When criminal activity is the ground for exclusion, the Attorney General must, in the exercise of his discretion, examine the gravity of the criminal activity and consider the alien's rehabilitation. Id. at 7-8.
 
 ADMINISTRATIVE PROCEEDINGS
 
 10
 The evidence regarding Junkovic's criminal history was extensive. Junkovic admitted the 1985 convictions of two burglaries that occurred in 1983 and 1984 (which formed the basis of the charge of deportability). He also admitted having violated his probation in 1987 when his urine tested positive for marijuana, for which he was sentenced to 18 months in prison. Additional evidence presented by the Service included a certified copy of 1) another burglary conviction in 1985, which Junkovic first denied, but later admitted, and 2) a 1985 conviction for possession of cannabis, criminal damage to property, and aggravated assault. During cross-examination, Junkovic was questioned about his criminal record for crimes that appeared on two criminal history information documents ("rap sheets"). At the hearing, he admitted receiving one year probation in 1982 on a simple assault charge, being arrested in 1982 for car theft, pleading guilty in 1982 to theft of labor services (for which he was sentenced to two days in jail), and being arrested (not convicted) in 1983 for illegal possession of firearms. As for other charges on the rap sheets about which he was questioned, he either denied them or testified that he could not remember them. On re-direct examination, he maintained that his only convictions were for the offenses charged in the Order to Show Cause. He testified that he used to drink a lot and committed many of his offenses while high or drunk. He added that he has reformed--he now goes to church and no longer drinks, uses narcotics, smokes cigarettes, or associates with his old friends with whom he used to get into trouble.
 
 
 11
 The BIA concluded that Junkovic was involved in a pattern of criminal behavior from 1982 until his probation violation in 1987 and that therefore he had to demonstrate unusual or outstanding equities before discretion could be exercised in his favor.
 
 
 12
 Junkovic has a number of factors in his favor. His immediate family members testified that they have close ties with him and would suffer emotional hardship if he were to leave. Junkovic also testified that if he were deported to Yugoslavia he would experience hardship. He stated that he had traveled three times to Yugoslavia since he immigrated to the United States, each time for about three to five months. Although he has an aunt there, he does not get along with her and did not stay with her. He claims that he does not speak the language and would have difficulty finding work there. Moreover, he is of Albanian descent and contends that he would suffer discrimination by the Yugoslavs.[3]
 
 
 13
 The BIA determined that Junkovic had demonstrated outstanding equities but nonetheless found them insufficient to overcome the serious crimes for which he was convicted. Therefore, the BIA concluded that his outstanding equities could not compel the exercise of discretion in his favor.
 
 ANALYSIS
 
 14
 The thrust of Junkovic's argument is that in balancing his favorable and adverse factors, the BIA improperly considered hearsay evidence in the rap sheets that was not supported by the record. At the hearing, Junkovic objected to the introduction of state and city police records, and his objection was sustained. However, the IJ did permit the Service to use the information in the rap sheets during cross-examination to question Junkovic about his criminal history. In addition, the IJ permitted the introduction of a certified record of a conviction for cannabis possession, property damage, and assault. On appeal, Junkovic asserts that he admitted only three burglary charges and one probation violation[4] and only those should have been considered. He contends that had the BIA only considered these offenses, surely his favorable factors would have outweighed the adverse factors.[5]
 
 
 15
 Although the Federal Rules of Evidence do not control in a deportation proceeding, Cunanan v. INS, 856 F.2d 1373, 1374 (9th Cir.1988), an alien must be afforded due process. Bustos-Torres v. INS, 898 F.2d 1053, 1055 (5th Cir.1990). The test for admissibility in a deportation proceeding is whether the evidence is probative and whether its admission is fundamentally fair. Id.
 
 
 16
 Here, the evidence in question was not introduced to establish deportability. Deportability had already been established by certified records of conviction. Rather, the evidence in question was introduced for the sole purpose of determining whether discretion should be exercised. Matter of Grijalva, 19 I & N Dec. 713, 722 (BIA 1985) (admitting information contained in police reports is especially appropriate where all relevant factors are considered in determining whether the alien warrants a favorable exercise of discretion). The rap sheets were used to question Junkovic about his criminal history. He admitted some of the items about which he was questioned, denied others,[6] and stated that he could not remember others. Junkovic was given an opportunity to rebut each of the charges cited from the rap sheets. See id. at 723-24. In addition, despite Junkovic's denial, the conviction for cannabis possession, property damage, and assault was established by a certified record. The BIA correctly determined that the use of the rap sheets did not violate due process.
 
 CONCLUSION
 
 17
 The BIA considered all of Junkovic's equities,[7] balanced them against the adverse factors, and gave a rational explanation for its decision. Because the BIA's discretion was not exercised in an arbitrary or capricious way, there was no abuse of discretion. The decision of the Board of Immigration Appeals is AFFIRMED.
 
 
 
 [1]
 The evidentiary hearing was held on March 8, 1988. Both Junkovic and his fiancee testified that they had definite plans to get married on May 1, 1988. At oral argument, counsel stated that they are now living together, unmarried
 
 
 [2]
 "[A] proper determination as to whether an alien has demonstrated unusual or outstanding equities can only be made after a complete review of the favorable factors in his case." Edwards, Interim Decision 3134 at 7 n. 3
 
 
 [3]
 When we asked the Service at oral argument if any relief was now available to Junkovic in light of the war in Yugoslavia, the Service responded that: 1) Junkovic could possibly move to reopen his case to apply for asylum, see, 8 C.F.R. § 3.2; or 2) the Attorney General might give temporary protective status pursuant to the Immigration Act of 1990, see 8 U.S.C. § 1253(h)(1), however, the Service was not aware of any such action on the part of the Attorney General. We take no position on this matter
 
 
 [4]
 The BIA noted an inconsistency between the record of conviction for the other probation violation and the lack of any indication of imprisonment for it. Thus, it appears that the BIA only relied on the probation violation that Junkovic admitted in reaching its determination
 
 
 [5]
 During cross-examination, Junkovic was asked if he was aware that there was a warrant out for his arrest before he left for one of his trips to Yugoslavia. He answered yes, but stated that the reason he left was not because of the warrant, but rather to get away from his bad friends with whom he would get into trouble. Junkovic argues that because his intent in leaving the United States for Yugoslavia was not to avoid the warrant, the import of which he did not understand, this trip should not have been considered an adverse factor. However, because Junkovic admitted that he knew there was a warrant for his arrest before he left for Yugoslavia, the BIA could reasonably find that he fled the United States to avoid arrest
 
 
 [6]
 For example, Junkovic argues that there is no indication in the record that he had been addicted to cocaine. The transcript clearly indicates that Junkovic admitted to having been addicted to cocaine and to having been an inpatient for seven months at a drug abuse treatment center
 
 
 [7]
 In his brief, Junkovic asks this court to consider his new favorable factor--that he is the father of a new-born daughter. This factor was before the BIA. Because his fiancee testified before the IJ that she was pregnant, the BIA did not find that the birth of a daughter added to the equities before the IJ at the time of the decision. In any event, it is not the function of this court to weigh factors. Garcia-Lopez, 923 F.2d at 76