998 F.2d 1017
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Yong HONG GUAN, Petitioner
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 92-2504.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 30, 1993.*
Decided July 16, 1993.
Rehearing Denied Aug. 5, 1993.
 
 1
 Before MANION and ILANA DIAMOND ROVNER, Circuit Judges, and PELL, Jr., Senior Circuit Judge
 
 ORDER
 
 2
 Yong Hong Guan, a native and citizen of China, seeks review of a decision of the Board of Immigration Appeals ("BIA") finding her deportable as charged, denying her application for political asylum and withholding of deportation, and refusing voluntary departure. For the reasons set forth below, we affirm the Board's decision.
 
 I. BACKGROUND
 
 3
 After a brief courtship in Canton, China, and a payment of a dowry to Guan's family, Guan married To Ha Quan, a permanent resident of the United States, on July 29, 1982. Quan left China the following day because he received word from the United States that his daughter was ill. In Boston, he filed a visa petition on his wife's behalf. When Guan applied for alien registration and an immigrant visa the following summer, she noted her final address in the United States as that of her husband in Boston, Massachusetts. Exhibit 11. In August of 1983, Guan entered the United States as a second preference immigrant upon presentation of an immigrant visa exempting her from the labor certification requirements of section 212(a)(14) of the Immigration and Nationality Act. 8 U.S.C. § 1182(a)(14).
 
 
 4
 Without notifying her husband, Guan traveled to Chicago rather than to Boston. Quan first learned that his wife was in the United States on September 3, 1983, when he called Hong Kong and discovered that Guan was living with her sister in Chicago. He wrote to Guan asking that she call him, but received no reply. He then traveled to Chicago and asked his wife to return with him, but she declined, citing sickness and her desire to wait for parcels sent from Hong Kong and for her "green card" before leaving Chicago. However, Guan never joined her husband in Boston.
 
 
 5
 Deportation proceedings were initiated against Guan on August 23, 1985, charging her with deportability as an alien excludable at time of entry under section 241(a)(1), 8 U.S.C. § 1251(a)(1). Guan denied allegations of a sham marriage, but the immigration judge ("IJ") found her deportable as charged. Guan's subsequent application for political asylum and withholding of deportation filed pursuant to section 243(h), 8 U.S.C. §§ 1158(a), (h), were also denied along with her request for voluntary departure. 8 U.S.C. § 1254(e). The BIA upheld the findings of the immigration judge and Guan has petitioned this court for review. On appeal, Guan raises the same arguments she presented before the BIA, and argues that the BIA's decision is not supported by reasonable, substantial, and probative evidence. She contends: (1) that inconsistencies and biases replete in Quan's testimony were not given proper consideration or weight, (2) that the INS failed to prove that the marriage was entered into for the primary purpose of obtaining an immigrant visa, and (3) that the IJ erred in concluding that her immigrant visa was procured through fraudulent statements, and in denying asylum and voluntary departure.[2] This court has jurisdiction to review final orders of deportation under 8 U.S.C. § 1105a(a), Johnson v. INS, 962 F.2d 574, 576 (7th Cir.1992), as such, our jurisdiction is limited to challenges to the decision of the BIA. Balazoski v. INS, 932 F.2d 638, 640 (7th Cir.1991).
 
 I. ANALYSIS
 A. Deportability Determination
 
 6
 Guan obtained a visa as an immediate relative immigrant because of her marriage to a permanent United States resident. Finding Guan's marriage to be a marriage of convenience, the Board concluded that Guan was deportable under section 212(a)(19),[3] 8 U.S.C. § 1182(a)(19), for procurement of an immigrant visa through fraud or willful misrepresentation.[4] To prove an alien fraudulently procured an immigrant visa on the basis of marriage, the INS must have shown by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true. Woodby v. INS, 385 U.S. 276, 286 (1966); Cordoba-Chaves v. INS, 946 F.2d 1244, 1249 (7th Cir.1991). Accordingly, we review a challenge to a deportability determination under the substantial evidence standard, Cordoba-Chaves, 946 F.2d at 1249, and must uphold the BIA's determination if on the record as a whole, it is supported by reasonable, substantial, and probative evidence. 8 U.S.C. § 1105a(4); see, e.g., Kaczmarczyk v. INS, 933 F.2d 588, 593 (7th Cir.), cert. denied, 112 S.Ct. 583 (1991).
 
 
 7
 A marriage entered into for the primary purpose of circumventing the immigration laws does not entitle an alien spouse to immigration benefits. Lutwak v. United States, 344 U.S. 604, 611-12 (1953). If at the time the parties were married they did not intend to establish a life together, the marriage is considered a sham. Bu Roe v. INS, 771 F.2d 1328, 1331 (9th Cir.1985). The conduct and lifestyle of the parties before and after marriage is relevant to determining their intent at the time of marriage. Lutwak, 344 U.S. at 617; Bark v. INS, 511 F.2d 1200, 1202 (9th Cir.1975) (time and extent of separation, combined with other facts and circumstances, can support finding that marriage was fraudulent); see In re Laureano, 19 I & N Dec. 1 (BIA 1983); In re McKee, 17 I & N Dec. 332 (BIA 1980); see, e.g., United States v. Abdel-Khaleq, 354 F.2d 642, 643-44 (7th Cir.1965). The conduct of the parties after marriage is relevant, however, only to the extent it bears on the subjective intent of the parties at the time they were married. Lutwak, 344 U.S. at 617. The fact that a marriage at some point becomes nonviable or nonsubsisting does not in itself indicate that the marriage was a sham at its inception. Mckee, 17 I & N Dec. at 333; In re Boromand, 17 I & N Dec. 450 (BIA 1980).
 
 
 8
 The BIA did not ignore evidence that the respondent and Quan may have initially loved each other and wanted to marry in China. In re Guan, No. Agp-wck-ynt at 4 (May 29, 1992). But it concluded that the facts and circumstances before and after the marriage supported a finding that Guan was motivated only by the prospect of living in the United States not by a desire to establish a life with her husband. Id. at 7. Only a week after their introduction, Quan proposed to Guan on May 14, 1982. She declined because he was not a United States citizen, but later agreed to marry. Guan's decision to travel to and remain in Chicago rather than to join her husband in Boston indicates that she was more than a bit disingenuous in her visa application in stating that the purpose of her travel to the United States was "to join my husband," and in giving his address in Boston as her destination. In fact, she did not even both to contact her husband after she arrived in August of 1983. Instead, Guan continued to live with her sister and as early as November 1983, obtained employment in Chicago. She also claimed to be single on her 1983 income tax returns. By April 1984, Quan realized that his wife would not move to Boston to be with him and in June of that year filed an annulment action.[5] The following year, Quan traveled to Chicago and again asked Guan why she refused to move to Boston. Guan replied that she did not want to see him and wanted a divorce.
 
 
 9
 Although Guan continues to dispute the facts relied on in the BIA's decision, conflicts in the testimony resolved in favor of Guan's former husband rest on credibility determinations which we must defer to, as long as they present no inherent contradictions and are supported by the weight of the evidence. Kulle v. INS, 825 F.2d 1188, 1193 (7th Cir.1987), cert. denied, 484 U.S. 1042 (1988). An evaluation supported by substantial evidence will not be reversed simply because we may disagree with the BIA's evaluation of the facts. Balazoski, 932 F.2d at 640. We are satisfied that the finding of procurement of an immigrant visa through fraud or willful misrepresentation is supported by substantial evidence that Guan did not intend to establish a life with her husband. A visa procured through fraud is invalid; therefore, it follows that Guan was also deportable under section 212(a)(20), 8 U.S.C. § 1182(a)(20), for entering the United States without a valid visa. Finally, because Guan was not entitled to enter under second preference immigrant status, she was not exempt from labor certification and thus, was excludable under section 212(a)(14), 8 U.S.C. § 1182(a)(14), for not having valid labor certification.
 
 B. Asylum & Withholding of Deportation
 
 10
 After Guan was determined to be deportable, she applied both for political asylum and withholding of deportation. To be eligible for asylum, an alien applicant must demonstrate either that she maintains a well-founded fear of persecution or that she was a victim of past persecution. See Sivaainkaran v. INS, 972 F.2d 161, 163 (7th Cir.1992). Whether an alien is eligible for asylum is a factual determination which we must uphold if it is supported by substantial evidence. Id.
 
 
 11
 As evidence of past persecution, Guan testified that because her family was considered to be capitalist and undesirable, she was forced to do hard labor and study communist literature for four years on a farm when she was young. Tr. 679. She also testified that she feared imprisonment if returned. To substantiate this fear, she referred to an individual who after being deported to China, was watched, imprisoned, and discriminated against in obtaining employment. Even assuming that Guan possessed a subjective fear of persecution, however, she failed to establish through specific detailed facts a good reason to fear that she would be singled out for persecution if returned to China. See id. The BIA noted that after her experience on the labor farm, Guan graduated from high school, was employed as a store clerk, and has never been jailed or harassed on account of race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1101(a)(42); INS v. Elias-Zacarias, 112 S.Ct. 812, 815 (1992). Because she was among many who performed hard labor during the Cultural Revolution, and failed to present any evidence of government harassment or persecution beyond those four years of labor, the evidence offered is not so compelling that any reasonable finder of fact would have to conclude that Guan possessed the requisite fear of persecution. See Elias-Zacharias, 112 S.Ct. at 817.
 
 
 12
 Even if, as Guan suggests, her case were viewed "from the standpoint of the Tiennami [sic] Square Demonstrations and subsequent brutal repression of dissidents in China by the Government there," Appellant's Br. at 27, it is likewise insufficient to establish a well-founded fear of persecution. Guan presented no evidence which would link her to these demonstrations, such that a fear of persecution pertained to her personally rather than to the general population. Moreover, political upheaval which affected a large percentage of the population is generally not sufficient to establish a fear of persecution for a sympathetic yet statutorily ineligible asylum applicant. See Sivaainkaran, 972 F.2d at 165.
 
 
 13
 Nor could Guan establish past persecution stemming from her experience at the labor farm. Neither the facts cited by the BIA nor any others alleged by Guan are sufficient to place Guan "within the category of cases in which 'the experience of persecution may so sear a person with distressing associations with [her] native country that it would be inhumane to force [her] to return there, even though [she] is in no danger of further persecution.' " See Osuch v. INS, 970 F.2d 394, 396 (7th Cir.1992) (quoting Skalak v. INS, 944 F.2d 364, 365 (7th Cir.1991)). Under these facts, the BIA's denial of asylum will not be considered an abuse of its discretion. Because substantial evidence supports the Board's findings that Guan failed to establish statutory eligibility for asylum, it follows that she has also failed to establish the more stringent standard of a clear probability of persecution required for withholding of deportation. See Balazoski, 932 F.2d at 640.
 
 C. Due Process
 
 14
 Guan also argues that the immigration judge improperly weighed the motives of Quan, exhibiting a bias in his favor and denying Guan a fair trial. Appellant's Br. at 14. Although her argument is more aptly characterized as a challenge to the IJ's credibility determinations which we have rejected above, we note that it fails to state a due process violation as well. Due process accords an alien in a deportation hearing "a reasonable opportunity to examine the evidence against [her], to present evidence in [her] own behalf and to cross-examine witnesses presented by the Government." 8 U.S.C. § 1252(b)(3); see Drobny v. INS, 947 F.2d 241, 244 (7th Cir.1991); Kulle, 825 F.2d at 1194. The record reveals that Guan was clearly afforded due process through the presentation of evidence on her behalf, and the opportunity to cross-examine Quan.
 
 D. Voluntary Departure
 
 15
 Once an alien is ordered deported, he or she may request voluntary departure in lieu of deportation. 8 U.S.C. § 1254(e); Garcia-Lopez v. INS, 923 F.2d 72, 74 (7th Cir.1991). An alien seeking voluntary departure must demonstrate that he or she is ready and willing to immediately depart from the United States if so ordered and has had a good moral character for at least the previous five years. See 8 C.F.R. § 244.1; Garcia-Lopez, 923 F.2d at 74. The decision whether or not to grant voluntary departure lies within the discretion of the Attorney General and her designees, the immigration judge and the BIA. Garcia-Lopez, 923 F.2d at 74.
 
 
 16
 In reviewing a denial of voluntary departure for an abuse of discretion, we are "limited to whether the discretion was actually exercised and whether it was exercised in an arbitrary or capricious manner." Id. Therefore the BIA must show that it weighed the favorable and unfavorable factors and articulate its reasons for denying relief. Id. After considering the positive factors such as Guan's family and employment ties and length of residence, the BIA concluded that participation in marriage fraud outweighed the favorable factors. Given the policy against procuring immigrant visas through fraud or willful misrepresentation, we cannot conclude that the Board's exercise of discretion was arbitrary or capricious.
 
 The decision of the Board is therefore
 
 17
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Appellant has filed no such statement, and Appellee has waived oral argument. Therefore, the appeal has been submitted on the briefs and record
 
 
 [2]
 In her brief, Guan argues that the findings of the IJ were erroneous; however, we lack jurisdiction to review the decision of the IJ. Balazoski v. INS, 932 F.2d 638, 640 (7th Cir.1991); Kubon v. INS, 913 F.2d 386, 387 (7th Cir.1990). To the extent the Board addressed these arguments, we will treat them as challenges to the Board's decision
 
 
 [3]
 Although the decision of the immigration judge refers to section 212(c)(19) at page 12, the charges noted correctly reflect the section to be 212(a)(19). In re Guan, No. Anx-ziv-xaz (Jan. 12, 1987). The Board's decision also correctly refers to section 212(a)(19) as the basis for determining deportation
 Section 212(a)(19) of the Act, 8 U.S.C. § 1182 provides:
 (a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
 * * *
 (19) Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact.
 
 
 [4]
 Guan's marriage did not fall within section 241(c) of the Act, 8 U.S.C. § 1251(c), which establishes a rebuttable presumption of deportability in violation of section 212(a)(19), 8 U.S.C. § 1182(a)(19), in the case of a marriage entered into fewer than two years prior to entry into the United States and judicially terminated within two years subsequent to entry. See Hamadeh v. INS, 343 F.2d 530, 531-32 (7th Cir.), cert. denied, 382 U.S. 838 (1965). Guan's marriage did not fulfill the second requirement, because it was not judicially terminated until August of 1987. Appellant's Br. at 10
 
 
 [5]
 Subsequently, Guan cross-filed for a divorce. Judicial termination of the marriage was not final however until August 31, 1987. Appellant's Br. at 10