**Robinson Flores GUEVARA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 94–2757.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1995.

Decided April 19, 1995.

Y. Judd Azulay (argued), Stephen D. Berman, Azulay & Azulay, Chicago, IL, for petitioner.

Janet Reno, U.S. Atty. Gen., Washington, DC, Samuel Der–Yeghiayan, I.N.S., James B. Burns, Office of U.S. Atty., Chicago, IL, Robert Kendall, Jr., David M. McConnell, Keisha D. Bell (argued), U.S. Dept. of Justice, Civ. Div., Immigration Litigation, Washington, DC, for respondent.

Before CUMMINGS and KANNE, Circuit Judges, and GRANT, District Judge.*

* The Honorable Robert A. Grant, for the Northern  District of Indiana, sitting by designation.

KANNE, Circuit Judge.

Robinson Guevara, an illegal immigrant, appeals an order denying him voluntary departure from the United States. Because the Board of Immigration Appeals did not abuse its discretion in denying Guevara's request for voluntary departure, we deny the petition for review.

## I. Background

Guevara is a citizen of the Philippines. In 1988 he was denied a tourist visa to enter the United States, so in 1989 he bought a counterfeit passport and entered the United States illegally. His mother, brother, and sister already lived in the United States, and Guevara stayed with them when he arrived.

From 1989 to 1992 Guevara worked illegally at his sister's dry cleaning business, receiving his pay in cash. He used his counterfeit passport to get an Illinois driver's license and a Social Security card. This setup lasted until March 23, 1992, when agents of the Immigration and Naturalization Service (INS) caught up with Guevara.

At first, Guevara tried to hoodwink the INS agents. He said he was a U.S. citizen and that he could prove it with his passport, which he was unable to produce. Then Guevara admitted that he was not a U.S. citizen and that he had entered the country illegally. INS agents searched his car and found an advertisement with Guevara's picture, underneath which was the handwritten legend "Wanted!!! Wife for this man with citizen. No fee. Pls. contact him. 759–4150 or 355–8338. Thanks." When confronted with this advertisement, Guevara said a former girlfriend must have planted it to incriminate him because she was jealous. He alternatively asserted his sister put it in his car as a joke. The INS agents arrested Guevara.

The INS began deportation proceedings on March 24, 1992. On June 20, 1992, Guevara married Tita Sevilla, a United States citizen. An immigration judge held a deportation hearing on December 21, 1992. Guevara conceded that he was deportable under the relevant statutes, but he asked that he be granted voluntary departure instead of being deported. *See* 8 U.S.C. § 1254(e). However, the immigration judge denied Guevara's request after balancing the factors favorable to him against the factors unfavorable to him.

Guevara appealed the immigration judge's decision to the Board of Immigration Appeals (BIA). On June 30, 1994, the BIA affirmed the immigration judge, weighing the favorable and unfavorable factors. On the favorable side the BIA considered Guevara's "strong family ties" to the United States, including that his wife, mother, brother and sister were all U.S. citizens. On the unfavorable side the BIA considered Guevara's entry using a forged passport, his later use of that passport to get false identification, his illegal employment, and his lying to INS agents when they first confronted him. The BIA then denied Guevara's request for voluntary departure, affirming the immigration judge. Guevara asks us to review the BIA's decision.

## II. Analysis

■ Voluntary departure would undoubtedly benefit Guevara. If he were to receive voluntary departure, he could select his destination, avoid the stigma of deportation, and have a greater chance of eventually returning legally to the United States. *Garcia–Lopez v. Immigration & Naturalization Serv.*, 923 F.2d 72, 74–75 (7th Cir.1991). There is, however, no right to receive voluntary departure. Immigration judges and the BIA, as delegates of the Attorney General, may grant or deny voluntary departure in the exercise of their discretion. *Bal v. Moyer*, 883 F.2d 45, 47 (7th Cir.1989).

■ Our review of the BIA's exercise of discretion is sharply limited. We uphold the BIA's denial of voluntary departure unless (1) it was made without rational explanation; (2) it inexplicably departed from established policies; or (3) it rested on an impermissible basis, such as invidious discrimination. *Garcia–Lopez*, 923 F.2d at 74. For the BIA's explanation to be rational, it must not be arbitrary and capricious, i.e., the BIA must have weighed all relevant favorable and unfavorable factors and state its reasons for denying relief. *Id.* We will not, however, determine the weight that should be given to each factor examined. *Cordoba–Chaves v.*

*Immigration & Naturalization Serv.,* 946 F.2d 1244, 1246 (7th Cir.1991).

 Guevara argues that the BIA erred in examining the relevant factors. He repeatedly emphasizes that in its opinion, the BIA's summary of the immigration judge's decision mentioned his consideration of Guevara's "advertisement in a newspaper seeking a United States citizen spouse." The BIA actually misquoted the immigration judge, who had not mentioned a newspaper, but only a handbill-type advertisement. Guevara seizes upon this misstatement and repeats, mantra-like, that the advertisement was not in a *newspaper.* Apparently, he wants to emphasize that it was instead designed to be posted (although he simultaneously denies it was even an advertisement). He says this is a mistake of fact that entitles him to a new decision.

Guevara's argument is frivolous. We review the decision of the BIA, not of the immigration judge, *Cordoba–Chaves,* 946 F.2d at 1246, and the BIA did not count the advertisement against Guevara. While the immigration judge thought that Guevara's marriage was fraudulent, mainly because it was entered into after deportation proceedings began and because of the advertisement, the BIA gave Guevara the benefit of the doubt and counted his marriage as a favorable factor. The BIA did not mention the advertisement in its list of considered unfavorable factors. Guevara argues against a straw man.

Guevara misses the mark even further with his second argument. He repeatedly insists that the BIA did not give "sufficient weight" to his marriage to a U.S. citizen. His only evidence is that the BIA denied his appeal: apparently Guevara thinks "sufficient" weight can only mean treating his marriage as conclusively entitling him to voluntary departure. This argument is also frivolous, because we will not re-weigh the factors the BIA considered. *Garcia–Lopez,* 923 F.2d at 74. The BIA explicitly considered the existence of his marriage and weighed that factor in its decision, and that is enough.

We reject Guevara's repeated demands that we reverse the BIA's decision, because it is clear that the BIA in no way abused its discretion. The BIA supported its decision with a detailed and rational explanation; Guevara does not argue, because he cannot, that the BIA's decision departed from established practices or rested on an impermissible basis. *Garcia–Lopez,* 923 F.2d at 74. The BIA may be either stern or generous in exercising its discretion. *Achacoso–Sanchez v. Immigration & Naturalization Serv.,* 779 F.2d 1260, 1264 (7th Cir.1985). Guevara wanted generosity, but he got sternness. We DENY the petition for review.