Marie Rose **HYPPOLITE**, Petitioner,

v.

**IMMIGRATION AND NATURALIZA- TION SERVICE**, Respondent.

No. 15983.

United States Court of Appeals
Seventh Circuit.

July 13, 1967.

Melvyn E. Stein, Chicago, Ill., for petitioner.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for respondent.

Before DUFFY, Senior Circuit Judge, and KNOCH and CUMMINGS, Circuit Judges.

KNOCH, Circuit Judge.

The petitioner, Marie Rose Hyppolite, a citizen and native of Haiti who entered the United States as a visitor for pleasure, was authorized to remain until April 16, 1966. She had not departed by May 19, 1966, when an order to show cause was issued. At hearings before a Special Inquiry Officer of the respondent, Immigration and Naturalization Service, in June and July, 1966, the petitioner, who was represented by counsel, conceded her deportability under § 241(a) (2) of the Immigration and Nationality Act, Title 8, U.S.C. § 1251(a) (2).

The petitioner applied for the privilege of voluntary departure which was granted. In the alternative, the petitioner also sought withholding of deportation to Haiti under § 243(h) of the Act, Title 8 U.S.C. § 1253(h), which was denied. The denial was sustained by the Board of Immigration Appeals and this petition for review followed.

Section 243(h) reads as follows:

Withholding of deportation

"(h) The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on account of race, religion, or political opinion and for such period of time as he deems to be necessary for such reason."

The hearings in this matter, the decisions of the Special Inquiry Officer and of the Board of Immigration Appeals occurred after the 1965 amendment which removed the word "physical" which had previously qualified the word "persecution" in this section.

■ The Attorney General is thus authorized to withhold deportation where in his opinion the alien would be subject to persecution on account of his race, religion, or political opinions. The petitioner here asserts that she would be sub-ject to persecution on account of her political opinions. The Attorney General's determination is within his administrative judgment or that of his duly authorized delegate. Lena v. Immigration and Naturalization Service, 7 Cir., 1967, 379 F.2d 536; United States ex rel. Dolenz v. Shaughnessy, 2 Cir., 1952, 200 F.2d 288, 291, cert. den. 345 U.S. 928, 73 S.Ct. 780, 97 L.Ed. 1358.

The petitioner contends that the decision made in her case was arbitrary in that she presented a *prima facie* case of persecution on account of political opinion which the Attorney General failed to rebut by clear and convincing evidence.

■ As we said in *Lena,* supra,

"This Court may determine whether there has been an abuse of the discretion reposed in the Attorney General but we do not substitute our own opinion for his so long as his reasons for denying suspension of deportation in any case are sufficient on their face. Obrenovic v. Pilliod, 7 Cir., 1960, 282 F.2d 874, 876; Chao-Ling Wang v. Pilliod, 7 Cir., 1960, 285 F.2d 517, 519; Kalatjis v. Rosenberg, 9 Cir., 1962, 305 F.2d 249, 250."

The petitioner relies on Woodby v. Immigration and Naturalization Service, 1966, 385 U.S. 276, p. 277, 87 S.Ct. 483, 17 L.Ed.2d 362, where the Supreme Court held that in deportation proceedings, the government must establish the facts supporting deportability by clear, unequivocal and convincing evidence. But we are not dealing here with the issue of whether the petitioner is or is not subject to deportation. That has been conceded. The sole question before us concerns the exercise of his discretion by the Attorney General.

The petitioner stated that her father had been arrested in 1960 apparently for political reasons and had never been heard from again. She believed that he was dead. Petitioner's counsel stated in oral argument that the rest of the family had fled to France and to the United States. Petitioner's mother is in France; two brothers, a sister and a step-father

are permanent residents in the United States. Petitioner designated France as the country to which her deportation should be directed if required by law.

The Special Inquiry Officer noted that the petitioner herself had never been arrested; that she was allowed to graduate from high school in 1962 and to complete two years of study at the University of Haiti, although while in high school she had been an officer of an organization (subsequently dissolved by the Haitian government) some of whose members had brought explosives to the high school to frighten other students away. She said that she was sometimes "bothered" by the school authorities who wished the students to confine themselves to study and not to disturb the order of the school. The petitioner said that she herself wrote no anti-government articles and made no anti-government speeches, but that she was advised by her relatives and friends to leave Haiti and was then later told that police inquiries had been made as to her whereabouts with a view to questioning her as to her activities while in Haiti, when she returned to Haiti for a short time prior to her most recent entry into the United States, on or about March 13, 1965.

In 1964 she had been allowed to leave Haiti to study at the Sorbonne University in Paris, France. In December of that year she came to the United States but returned to Haiti in January, 1965, for about two months. She stated that she did not know if the Haitian government forces knew that she had been issued an official passport document to depart for her second visit to the United States because she had paid somebody to secure the document. The Special Inquiry Officer took judicial notice of the suppression of human rights and nonexistence of any rule of law under the current government in Haiti, but he also noted that petitioner had returned there of her own volition. Despite the general statement she made of the advice she received from "relatives and friends" he found no evidence that she would be persecuted for her political opinions.

 We believe that our opinion in *Lena,* supra, is dispositive of this case as well. As we said there:

"It is clear that the Attorney General employs stringent tests and restricts favorable exercise of his discretion to cases of clear probability of persecution of the particular individual petitioner. The Attorney General's course of conduct, however, shows consistency in the various cases."

The instant petition for exercise of the Attorney General's discretion was considered on its merits and denied. It does not appear from the record before us that the action was arbitrary.

The petition for review is hereby dismissed.

Petition dismissed.