**William CORDOBA-CHAVES,**
**Petitioner,**

v.

**IMMIGRATION AND**
**NATURALIZATION SERVICE,**
**Respondent.**

**No. 91–1339.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 2, 1991.

Decided Oct. 22, 1991.

---

Donald Kempster (argued), Thomas J. Dimitroff, Kempster & Associates, Chicago, Ill., for petitioner.

Fred Foreman, U.S. Atty., Office of the U.S. Atty., Crim. Div., Chicago, Ill., Richard M. Evans, Alison R. Drucker, Lori L. Scialabba, David J. Kline, Dept. of Justice, Office of Immigration Litigation, Richard L. Thornburg, U.S. Atty. Gen., Office of the U.S. Atty. Gen., Washington, D.C., A.D. Moyer, I.N.S., Chicago, Ill., Marshall T. Golding (argued), Office of Immigration Litigation, Civ. Div., Washington, D.C., for respondent.

Before BAUER, Chief Judge, CUMMINGS and WOOD, Jr., Circuit Judges.

CUMMINGS, Circuit Judge.

This is an appeal from a decision of the Board of Immigration Appeals ("BIA"), in which the BIA denied the request of William Cordoba–Chaves for discretionary relief pursuant to section 212(c) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1182(c), and ordered him deported to Colombia. We affirm the BIA's decision.

## BACKGROUND

William Cordoba–Chaves is a native and citizen of Colombia. He entered the United States on March 16, 1966 at the age of five as a lawful permanent resident. His mother, father, three brothers, and one sister, who are naturalized United States citizens, all live in the Chicago area. He is married

to a United States citizen and has a United States citizen son.

Cordoba–Chaves was convicted of one count of possession of cannabis in 1983 and one count of delivery of cannabis in 1984. On March 14, 1985, he was convicted of murder and aggravated battery, for which he was sentenced to imprisonment of twenty-five years and five years respectively, to be served concurrently.

On April 8, 1986, the Immigration and Naturalization Service ("Service") issued Cordoba–Chaves an Order to Show Cause, alleging: 1) a violation of section 241(a)(11) of the Act on the basis of the state court conviction for delivery of cannabis; and 2) a violation of section 241(a)(4) on the basis of the state court convictions for murder and aggravated battery, two crimes involving moral turpitude.[1] At the deportation hearing, Cordoba–Chaves admitted the allegations but denied deportability. Cordoba–Chaves contended that the murder and aggravated battery arose out of a single scheme of misconduct which would not render him deportable.[2] The Immigration Judge ("IJ") found Cordoba–Chaves deportable on both grounds.[3] Cordoba–Chaves then applied for relief from deportation under section 212(c) of the Act. After a hearing on the merits of the application for section 212(c) relief, in the exercise of discretion the IJ granted the application.

The Service appealed the grant of relief under section 212(c), and Cordoba–Chaves appealed the IJ's finding that he was deportable under section 241(a)(4). The BIA agreed with the IJ that Cordoba–Chaves was deportable under section 241(a)(11), but held that the section 241(a)(4) ground for deportation had not been established. However, the BIA also found that the discretionary grant of relief under section 212(c) was not warranted and ordered Cor-

doba–Chaves deported to Colombia. On appeal, Cordoba–Chaves argues that: 1) the BIA's decision to deny relief was not supported by reasonable, substantial, and probative evidence; and 2) the BIA abused its discretion by failing to consider all of the relevant factors that were present.

## STANDARD OF REVIEW

▮▮▮ An appellate court has jurisdiction to review all final orders of deportation. 8 U.S.C. § 1105a(a). "We review the decision of the BIA, not the IJ." *Balazoski v. INS*, 932 F.2d 638, 640 (7th Cir.1991). Discretionary denials are reviewed for an abuse of discretion and are "limited to whether the discretion was actually exercised and whether it was exercised in an arbitrary or capricious manner." *Garcia–Lopez v. INS*, 923 F.2d 72, 74 (7th Cir. 1991). After weighing all of the factors, both favorable and unfavorable, the BIA must state its reasons for denying relief. *Id.* A court of appeals does not have the authority to determine the weight to afford to each factor. *Id.* This court will uphold a denial by the BIA unless it was made without a rational explanation, it inexplicably departed from established policies, or it rested on an impermissible basis, *e.g.*, invidious discrimination against a particular race or group. *Bal v. Moyer*, 883 F.2d 45, 46 (7th Cir.1989).

## SECTION 212(c)

Section 212(c) of the Act provides that "[a]liens lawfully admitted for permanent resident [sic] who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to [certain specified grounds of ex-

---

**1.** Section 241(a)(4) provides for the deportation of an alien "convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial." 8 U.S.C. § 1251(a)(2)(A)(ii) (1991) (formerly 8 U.S.C. § 1251(a)(4)).

**2.** The evidence at his trial showed that Cordoba–Chaves had driven up to another vehicle and fired into it, killing a passenger and wounding the driver. The evidence also showed that the incident was gang-related.

**3.** Regarding the § 241(a)(11) charge, the IJ found him deportable on the basis of a certified statement of conviction.

clusion]." 8 U.S.C. § 1182(c). The statute has also been interpreted to apply to lawful permanent residents who have not left the United States but meet the seven-year requirement and face deportation. *Variamparambil v. INS*, 831 F.2d 1362, 1364 n. 1 (7th Cir.1987) (citing *Matter of Silva*, 16 I & N Dec. 26 (BIA 1976)). However, statutory eligibility does not automatically provide for an indiscriminate waiver of deportation. *Matter of Buscemi*, 19 I & N Dec. 628, 633 (BIA 1988). Rather, whether an alien merits relief under section 212(c) must be determined by the Attorney General (or his delegate) as a matter of discretion, with the alien bearing "the burden of demonstrating that his application warrants favorable consideration." *Matter of Marin*, 16 I & N Dec. 581, 583 (BIA 1978).

In exercising his discretion, the Attorney General balances the social and humane considerations in the alien's favor against any adverse factors that demonstrate his undesirability as a permanent resident in the United States. *Matter of Edwards*, Interim Decision 3134 at 6 (BIA 1990). The BIA has identified both favorable and adverse factors to consider in determining whether to grant a waiver of deportation. Factors favorable to the alien include:

> family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character.

*Marin*, 16 I & N Dec. at 584–85. Examples of factors that are adverse to an alien's application for discretionary relief under section 212(c) are: 1) the nature and underlying circumstances of the exclusion ground at issue; 2) any additional significant violations of this country's immigration laws; 3) the nature, recency, and seriousness of a criminal record; and 4) any

other evidence of an alien's bad character or undesirability as a permanent resident. *Id.* at 584. One or more of these adverse factors may ultimately be determinative of whether relief under section 212(c) will be granted or denied. *Edwards*, Interim Decision 3134 at 6.

More serious negative factors require a heightened showing of favorable evidence, which may even have to involve unusual or outstanding equities. *Buscemi*, 19 I & N Dec. at 633; *see also Edwards*, Interim Decision 3134 at 7 n. 3 ("a proper determination as to whether an alien has demonstrated unusual or outstanding equities can only be made after a complete review of the favorable factors in his case"). However, a demonstration of outstanding favorable factors does not compel relief, "rather, absent such equities, relief will not be granted in the exercise of discretion." *Edwards*, Interim Decision 3134 at 7 (where the adverse factors are very serious, a favorable exercise of discretion may not be warranted even though the equities are outstanding). When the ground for exclusion is criminal activity, the Attorney General must examine the gravity of the criminal activity, whether it be a single serious crime or a succession of criminal acts that establish a pattern of serious criminal misconduct. *Id.* Moreover, when an alien with a criminal record requests relief under section 212(c), "rehabilitation [is] a factor to be considered in the exercise of discretion." *Id.* at 8.

## ADMINISTRATIVE PROCEEDINGS

The IJ found that in Cordoba–Chaves' case, the crimes of murder and aggravated battery were particularly heinous. Consequently, Cordoba–Chaves had to establish unusual or outstanding equities to offset the serious crimes of which he had been convicted. The IJ found that Cordoba–Chaves had a number of factors in his favor. First, at the time of the hearing, Cordoba–Chaves had been a permanent resident for almost 24 years, having arrived in this country at the age of five. Second, he has important family ties in this country and an unusually strong support system.

The IJ heard testimony from his father, mother, brother, sister-in-law, and pastor, who stated that they believe that he has changed since the commission of the crimes and who testified to their willingness to help him once he is released from prison. Moreover, the IJ remarked that even though his marriage appears to be strained, the fact that Cordoba–Chaves has a United States citizen wife and child could not be lightly dismissed. Finally, the IJ found that Cordoba–Chaves had made an affirmative showing of rehabilitation. In particular, the IJ noted that in prison Cordoba–Chaves had favorable progress reports and had engaged in training in computers and as a barber, that his family members testified that his life turned around while he was in prison, and that the sentencing judge for the murder and aggravated battery convictions noted that there was hope of rehabilitation for him. Concluding that Cordoba–Chaves had established the unusual or outstanding equities necessary to offset his serious crimes and that he had shown rehabilitation necessary to prove that he merits relief, the IJ granted a waiver under section 212(c).

The BIA agreed that Cordoba–Chaves' convictions for the murder and aggravated battery[4] as well as for intent to distribute a controlled substance were serious offenses requiring a showing of unusual or outstanding countervailing equities. The BIA noted the factors in his favor. Although Cordoba–Chaves had not seen his wife in a year and a half, they occasionally speak on the telephone. He sees his son twice a month and has maintained a close relationship with him. The BIA considered the testimony of his family—how his parents' health problems appear to be the result of the stress of his arrest and conviction for murder and how they would suffer if separated from him by his deportation. The BIA also noted his long residence in the United States and the various jobs that he has held since he was 15 years old. Finally, the BIA noted the progress he had made toward rehabilitation. In particular, in prison Cordoba–Chaves engaged in job training and also volunteered for charitable activities, leading to his handling of substantial amounts of cash for the Jaycees. The BIA noted that testimony in the record indicated that he was well-liked, courteous, polite, and also that he had been disciplined only once in prison. The BIA concluded, as did the IJ, that Cordoba–Chaves' favorable factors constituted outstanding equities.

On the adverse side, the BIA was "disturbed" by Cordoba–Chaves' lack of candor regarding the shooting conviction because he testified that he had belonged to a street gang only from 1975 to 1977, and yet the 1948 shooting was gang-related. Moreover, Cordoba–Chaves denied committing the shooting crime, even after conviction. The BIA noted that "[s]uch a denial does not bode well for the prospects of rehabilitation" and that there was no evidence in the record that he sought or obtained counseling to deal with the violent impulses that led him to commit the offenses. In addition, the BIA noted that his second arrest for drug charges occurred while he was still on probation for the first drug conviction, concluding that he had not taken the opportunity to rehabilitate himself.

The BIA also noted factors that would mitigate the hardship of deportation. Cordoba–Chaves speaks, reads, and writes Spanish. He has traveled to Colombia and knows his relatives there, some of whom have good positions and nice homes. The BIA, concluding that his outstanding equities were not sufficient to overcome the grave crimes of murder and aggravated battery together with his controlled substance convictions, ordered him deported to Colombia.

## ANALYSIS

On appeal, Cordoba–Chaves argues that the BIA's decision is not supported by reasonable, substantial, and probative evidence and that the BIA abused its discretion by failing to consider his outstanding

---

**4.** Although the BIA found that the convictions for murder and aggravated battery did not support a charge of deportability, these convictions could be considered as adverse factors in determining whether to exercise discretion in his application for relief under § 212(c).

equities. Cordoba–Chaves argues that the BIA did not accord due deference to the factual and credibility determinations of the IJ, nor did the BIA explain why the IJ's contrary determinations were erroneous. While admitting that the BIA may determine a case de novo, Cordoba–Chaves argues that factual determinations of an Immigration Judge should not be overturned unless they are clearly insupportable. He argues that a court of appeals should carefully scrutinize a decision of the BIA that overturns the factual, especially the credibility, determinations of the IJ.

The Service notes several problems with Cordoba–Chaves' reasoning. First of all, a showing of reasonable, substantial, and probative evidence is required for determinations of deportability, not the exercise of discretion. See Hyppolite v. INS, 382 F.2d 98, 99 (7th Cir.1967) (Woodby v. INS, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) holds that deportability must be established by clear, unequivocal and convincing evidence, not the exercise of the Attorney General's discretion). Cordoba–Chaves does not contest the finding of deportability. Second, the statute only defines who is eligible to apply for relief—it does not provide any standards for determining the exercise of discretion. See INS v. Cardoza–Fonseca, 480 U.S. 421, 448, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987) (when Congress leaves gaps, "the courts must respect the interpretation of the agency to which Congress has delegated the responsibility for administering the statutory program"). Instead of objective factors involving factual determinations, the BIA has established a balancing requirement to be applied to convicted aliens on a case-by-case basis. Edwards, Interim Decision 3134 at 8.

■ Cordoba–Chaves' arguments are without merit. To begin with, the factual and credibility determinations of the BIA are not at issue. The BIA was not restricted in its review of the administrative record as we are in reviewing the BIA's discretionary decisions. Contrary to his contention, the BIA was not required to identify "errors" in the IJ's reasoning. See DeLucia v. INS, 370 F.2d 305, 308 (7th Cir.1966),

cert. denied, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 784 (1967) (the BIA is not bound by the IJ's order and may determine a case de novo ). The BIA reviewed the entire administrative record de novo, see Castillo–Rodriguez v. INS, 929 F.2d 181, 183 (5th Cir.1991) (the BIA makes a de novo review of the administrative record), including the favorable factors. The BIA then balanced all of the factors and concluded that Cordoba–Chaves did not warrant relief under its exercise of discretion, giving a rational explanation for the denial of discretion. Garcia–Lopez, 923 F.2d at 76. On appeal, Cordoba–Chaves is essentially asking this court to substitute the IJ's treatment of the relevant factors for that of the BIA.

■ However, this court may not review the facts of this case de novo. INS v. Rios–Pineda, 471 U.S. 444, 452, 105 S.Ct. 2098, 2103, 85 L.Ed.2d 452 (1985) ("it is not for the judiciary to usurp Congress' grant of authority to the Attorney General"). We may only reverse the findings of the BIA if it has abused its discretion. See Blackwood v. INS, 803 F.2d 1165, 1168 (11th Cir.1986) (where the IJ and BIA interpret the evidence differently, a court of appeals is not free to choose between the interpretations). In this case, the IJ and the BIA concurred in finding both that Cordoba–Chaves' crimes were particularly serious and that he had established outstanding equities. They differed with respect to rehabilitation and to the outcome of the balancing of factors. The BIA properly balanced all relevant factors, giving a rational explanation for its decision. Moreover, the evidence was sufficient to support the BIA's interpretation. Id. ("If the Board's decision is supported by substantial evidence, Congress has mandated that [a reviewing court] defer to the Board and affirm.") (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951)). Therefore, the BIA's discretion was not exercised in an arbitrary or capricious manner.

## CONCLUSION

Because the BIA did not abuse its discretion in denying Cordoba–Chaves a waiver

of deportation under section 212(c) of the Act, the decision of the BIA is AFFIRMED.