974 F.2d 1340
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jose SANTILLANES-BUSTILLO, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 91-2376.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 13, 1992.*
Decided Aug. 18, 1992.
 
 Before CUDAHY, and COFFEY, Circuit Judges, and PELL, Senior Circuit Judge.
 
 ORDER
 
 1
 Jose Santillanes-Bustillo appeals from a decision by the Board of Immigration Appeals ("BIA") dismissing his appeal from an order of an Immigration Judge ("IJ") directing that he be deported to Mexico. We affirm.
 
 I. BACKGROUND
 
 2
 Santillanes-Bustillo, a thirty-year-old native and citizen of Mexico who entered the United States as a lawful permanent resident at the age of six, has lived in the Chicago area for the past twenty years. He has two children from a marriage that ended in divorce and another child by a woman he never has married.
 
 
 3
 The Immigration and Naturalization Service ("INS") issued Santillanes-Bustillo an Order to Show Cause, charging him with deportability as an alien convicted of two crimes of moral turpitude not arising out of a single scheme of criminal misconduct. Section 241(a)(4) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1251(a)(4). This charge of deportability was premised on (1) petitioner's conviction in the Circuit Court of Cook County, Illinois, on February 18, 1987, for residential burglary; and (2) his conviction in the same court on April 18, 1989 for possession of a stolen motor vehicle and burglary.
 
 
 4
 At the deportation hearing, Santillanes-Bustillo admitted the allegations. He testified that he is unable to write Spanish and has only a limited ability to speak and read the language. He expressed an intent to maintain contact with his two daughters by his first wife, but noted that "they got another father already." Respondent's Brief, filed Jan. 15, 1992, at 7. The mother of his third child, he said, wanted to wait and observe his behavior upon release from prison before deciding whether to allow him to live with them.
 
 
 5
 Including the convictions which are the basis for the order of deportation, Santillanes-Bustillo has a criminal record spanning ten years. He has been convicted of simple battery (1979); theft (1981); armed robbery (1981); battery (1986); residential burglary (1987); and possession of a stolen vehicle and burglary (1989). His employment history includes work in a variety of occupations, some of it during incarceration.
 
 
 6
 Three members of his family testified in support of his request for a grant of discretionary relief pursuant to § 212(c) of the Act, 8 U.S.C. § 1182(c). They stated that Santillanes-Bustillo enjoys a good relationship with his children and provides some measure of financial assistance to them. Two of his daughters submitted letters stating that they would miss their father were he to be deported. The relatives also testified that Santillanes-Bustillo had matured and would not return to a pattern of criminal behavior upon his release from prison.
 
 
 7
 During the hearing, Santillanes-Bustillo wore a chain around his waist, handcuffs, and cuffs around his ankles. The IJ overruled his objection to this form of physical restraint. In addition to finding him deportable, the IJ ruled that Santillanes-Bustillo did not merit discretionary relief. On appeal to the BIA, Santillanes-Bustillo argued that the IJ erred in denying him relief and that the shackling at the deportation hearing deprived him of due process. The BIA upheld the decision of the IJ.
 
 
 8
 Santillanes-Bustillo now argues on appeal that the BIA abused its discretion (1) by denying his application for a waiver of deportation without considering all of the evidence in the record favorable to him; and (2) by failing to remand the case for a hearing that would safeguard the due process rights of Santillanes-Bustillo by prohibiting the use of physical restraints during the proceedings.
 
 II. ANALYSIS
 A. Standard of Review
 
 9
 Decisions of the BIA are final orders subject to judicial review in the United States courts of appeal. Wijeratne v. INS, No. 90-2482, 1992 U.S.App. LEXIS 7674, at * 4 (7th Cir. Apr. 24, 1992); 8 U.S.C. § 1105a(a). This court accords special deference to final orders of deportation and will overturn a decision only if the BIA has abused its discretion. Johnson v. INS, No. 91-2290, 1992 U.S.App. LEXIS 7727, at * 6 - 7 (7th Cir. Apr. 24, 1992); Cordoba-Chaves v. INS, 946 F.2d 1244 (7th Cir.1991). Review for abuse of discretion is "limited to whether the discretion was actually exercised and whether it was exercised in an arbitrary or capricious manner." Garcia-Lopez v. INS, 923 F.2d 72, 74 (7th Cir.1991). We are obliged to uphold a discretionary denial by the BIA unless the decision (1) was made without rational explanation; (2) inexplicably departed from established policies; or (3) rested on an impermissible basis (such as invidious discrimination against a particular race or group). Bal v. Moyer, 883 F.2d 45, 46 (7th Cir.1989) (quoting Achacoso-Sanchez v. INS, 779 F.2d 1260, 1265 (7th Cir.1985)).
 
 
 10
 B. Relief from Deportation Pursuant to § 212(c)
 
 
 11
 Eligibility for discretionary relief from deportation under § 212(c) requires an alien (1) to be lawfully admitted for permanent residence and (2) to have a lawful unrelinquished domicile of seven consecutive years. Variamparambil v. INS, 831 F.2d 1362, 1364 n. 1 (7th Cir.1987) (citing Matter of Silva, 16 I & N Dec. 26 (BIA 1976)). Once an alien satisfies this threshold requirement, the granting of relief is not mechanical, but rather depends on the discretionary decision of the Attorney General (or his delegate). Cordoba-Chaves, 946 F.2d at 1247. The burden then falls on the alien to demonstrate that his application warrants favorable consideration. Matter of Marin, 16 I & N Dec. 581, 583 (BIA 1978).
 
 
 12
 In the exercise of his discretion, the Attorney General weighs "social and humane considerations" favoring the alien[1] against adverse factors that militate against the alien remaining in the United States as a permanent resident. Cordoba-Chaves, 946 F.2d at 1247 (citing Matter of Edwards, Interim Decision 3134 at 6 (BIA 1990)).[2] Before the Attorney General can weigh these positive and negative attributes, the alien must clear a preliminary hurdle by demonstrating "unusual or outstanding equities" in cases presenting serious negative factors. Cordoba-Chaves, 946 F.2d at 1244; Marin, 16 I & N Dec. at 585. In some instances, then, an IJ need never balance the positive and negative factors if the alien is unable to show unusual or outstanding equities.
 
 
 13
 In deciding whether to exercise discretion, the Attorney General may consider the ability of an alien with a criminal record to be rehabilitated. See Cordoba-Chaves, 946 F.2d at 1247 (In instances in which criminal activity is the ground for exclusion or deportation, the Attorney General "must examine the gravity of the criminal activity, whether it be a single serious crime or a succession of criminal acts that establish a pattern of serious criminal misconduct.") (citing Edwards, Interim Decision 3134 at 7). In consideration of Santillanes-Bustillo's recidivism, the BIA expressed "lack of confidence as to his rehabilitation." Petitioner's Brief, filed Nov. 25, 1991, Appendix at 7.
 
 
 14
 Given Santillanes-Bustillo's extended criminal record, it was entirely proper for the BIA to require him to demonstrate unusual or outstanding equities in order to avoid deportation. In determining that the equities presented by Santillanes-Bustillo failed to rise to the requisite level of unusual or outstanding, the BIA acted in neither an arbitrary nor capricious manner. On alternative grounds--which we need not review--the BIA also held that the equities in Santillanes-Bustillo's favor were outweighed by the adverse factors in the record.
 
 
 15
 Contrary to the contentions of Santillanes-Bustillo, the BIA exercised its discretion in accordance with the Act as well as case law. The record does not support his claim that the BIA failed to take into account all of the favorable evidence. Among the positive factors considered by the BIA were Santillanes-Bustillo's family ties in this country (evidenced in part by the visits he makes to see his children, whom he supports financially), his residence here since 1967, and his history of employment in a variety of jobs. The BIA concluded, however, that these equities were not unusual or outstanding. Specifically, the BIA noted that the putative strength of Santillanes-Bustillo's family ties is somewhat questionable, as he is divorced from his first wife, whose new husband supports the financial needs of Santillanes-Bustillo's two older children. Moreover, the mother of his youngest child is unsure whether to allow him to live with them. The BIA noted, however, that if Santillanes-Bustillo were deported to Mexico, some hardship would befall his family, particularly his mother. Additionally, the BIA observed that despite his twenty-four year residency here, the last ten years have been marked by conviction for several misdemeanors and felonies.
 
 
 16
 The BIA also found that Santillanes-Bustillo did not establish an unusual or outstanding equity with respect to the potential hardship deportation would cause him or his family. He did not show, for instance, that he would be unable to find employment in Mexico, notwithstanding his limited ability to communicate in Spanish. In response, Santillanes-Bustillo contends that his failure to show an inability to find work in Mexico "has nothing to do with any positive or negative factor and is an improper requirement which placed an undue burden on Mr. Santillanes." Petitioner's Brief, at 12. To the contrary, demonstration by an alien of the difficulty of finding employment in the country to which he is to be deported may either indicate hardship and thus qualify as a favorable factor, see Cordoba-Chaves, 946 F.2d at 1247, or establish an unusual or outstanding equity.
 
 
 17
 The BIA further determined that "it does not appear that he encountered any language problems during his 1-month visit to Mexico [in 1981]" and that "it appears his family could help him financially make a new start in Mexico, as well as visit him there." Petitioner's Brief, Appendix at 6. Santillanes-Bustillo seizes upon these conclusions as "baseless and improper." Petitioner's Brief, at 12. So too does Santillanes-Bustillo challenge two other conclusions of the BIA as mischaracterizations of the evidence--that his children no longer need his support and that only his mother would suffer were he to be deported. Certainly his remark that his daughters "got another father already" can be taken at face value. But even if this court would not draw the same inferences with regard to Santillanes-Bustillo's ability to communicate in Mexico, his family's precise financial circumstances, or the emotional hardship his mother alone would suffer, we may not substitute our judgment for that of the BIA.
 
 
 18
 Under no circumstances will this court conduct a de novo review of a deportation case adjudged by the BIA. INS v. Rios-Pineda, 471 U.S. 444, 452 (1985) ("it is not for the judiciary to usurp Congress' grant of authority to the Attorney General"); Cordoba-Chaves, 946 F.2d at 1249. Abuse of discretion is the appropriate standard of review in this case, and here we find none because the BIA based its decision on substantial evidence sufficient to support its conclusion. Id. Explaining its reasoning in a rational and well-reasoned decision, the BIA exercised its discretion in conformity with established policies--namely in a manner neither arbitrary nor capricious.
 
 
 19
 C. Physical Restraint at Deportation Hearing
 
 
 20
 A criminal defendant may not be shackled or bound at trial "except as a last resort" to prevent disruptions in the courtroom. Illinois v. Allen, 397 U.S. 337, 344 (1970); see also United States v. Fountain, 768 F.2d 790, 794 (7th Cir.1985), cert. denied, 475 U.S. 1124 (1986). A deportation hearing, however, is a purely civil action unlike a criminal proceeding in which a defendant enjoys substantial constitutional protections. INS v. Lopez-Mendoza, 468 U.S. 1032 (1984); Argiz v. United States Immigration, 704 F.2d 384, 387 (7th Cir.1983); Chavez-Raya v. INS, 519 F.2d 397, 400 (7th Cir.1975). While it need not include the usual panoply of constitutional safeguards, a deportation hearing must conform with fundamental due process. United States v. Nicholas-Armenta, 763 F.2d 1089 (9th Cir.1985). Still, "[c]onsistent with the civil nature of the proceeding, various protections that apply in the context of a criminal trial do not apply in a deportation hearing." Lopez-Mendoza, 468 U.S. at 1038.
 
 
 21
 Deportation hearings, for instance, may take place in prison. 8 U.S.C. § 1252a. In this case a room in the Joliet Correctional Center, a maximum security state correctional institute, was the setting for the proceedings. Even though Santillanes-Bustillo was a medium security prisoner serving his sentence at another facility, officials of the Illinois Department of Corrections were authorized to order him restrained during the hearing. See generally ILL.REV.STAT. ch. 38, pp 1003-2-2(m), 1003-1-2(a) (1982); 20 ILL.ADMIN.CODE tit. 20, § 501.110 (1991).[3] Moreover, a trial judge has wide discretion in determining whether circumstances require the use of restraints. United States v. Amaro, 816 F.2d 284, 285 (7th Cir.1987), cert. denied 481 U.S. 1031 (1987).
 
 
 22
 The use of physical restraints in the courtroom is disfavored primarily because the sight of shackles, cuffs, and gags might leave a potentially negative impression on a jury. United States v. Pallais, 921 F.2d 684, 686 (7th Cir.1990), cert. denied, 112 S.Ct. 134 (1991); Harrell v. Israel, 672 F.2d 632, 637 (7th Cir.1982). In a deportation hearing, the absence of a jury reduces due process concerns about the use of physical restraints undermining the fairness of proceedings. True, shackling can result in other disadvantages besides jury bias--affecting, perhaps, a defendant's ability to contribute effectively to his defense. Allen, 397 U.S. at 344. But in order for an alien to succeed on a due process claim, he must demonstrate actual prejudice. Nicholas-Armenta, 763 F.2d at 1089 (9th Cir.1985).
 
 
 23
 The BIA found after reviewing the record that the IJ conducted a fair and impartial hearing. Santillanes-Bustillo presents no evidence refuting this finding. Accordingly, he has failed to establish prejudice indicating that the BIA abused its discretion in its decision not to remand the cause for a new hearing.
 
 
 24
 For the foregoing reasons, the judgment of the BIA is
 
 
 25
 AFFIRMED.
 
 
 26
 CUDAHY, Circuit Judge, concurring.
 
 
 27
 I agree that shackling the subject of a deportation hearing in these circumstances does not violate due process. Here prison security considerations are obviously implicated. On the other hand, shackling as a general matter is inconsistent with the decorum and dignity of a proceeding having such serious consequences. See Illinois v. Allen, 397 U.S. 337, 344 (1969). Admittedly, this proceeding was not criminal in nature. Even so, the outcome of such an inquiry may be just as severe as criminal sanctions. Therefore, shackling should be resorted to only where there is a clear need, which does not appear to be the case here.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 Favorable factors consist of
 family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs ... a history of employment ... evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character....
 Marin, 16 I & N Dec. at 584-585 (citations omitted).
 
 
 [2]
 Adverse factors include "the nature and underlying circumstances of the exclusion ground at issue ... the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country." Marin, 16 I & N Dec. at 584 (citations omitted)
 
 
 [3]
 Section 501.110 provides in pertinent part: "(a) Handcuffs, security belts and/or leg irons may be used to restrain any committed person when: (2) A committed person is transported outside the facility, or (3) Determined by the Chief Administrative Officer to be necessary to security."