**Teodor GROZA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 93–1684.**

United States Court of Appeals, Seventh Circuit.

Argued March 30, 1994.

Decided July 14, 1994.

**816**

Royal F. Berg (argued), Chicago, IL, for petitioner.

William P. Barr, Office of U.S. Atty. Gen., Washington, DC, A.D. Moyer, I.N.S., Chicago, IL, Mark C. Walters, Michele Y.F. Sarko (argued), Office of Immigration Litigation, Civ. Div., Washington, DC, James B. Burns, Office of U.S. Atty., Chicago, IL, Francesco Isgro, William J. Howard, David J. Kline, Dept. of Justice, Office of Immigration Litigation, Washington, DC, for respondent.

Before BAUER, FLAUM, and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

The Immigration and Naturalization Service ("I.N.S.") charged Teodor Groza with deportability pursuant to § 241(a)(4) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4), because Groza had been convicted of a "crime involving moral turpitude." Groza conceded his deportability, but submitted a request for asylum and withholding of deportation. An Immigration Judge ("IJ")

determined that Groza was statutorily ineligible for withholding of deportation and denied Groza's asylum request in the exercise of his discretion. Groza then appealed to the Board of Immigration Appeals ("the Board") and also filed a Motion to Reopen his deportation proceedings. The Board denied Groza's Motion to Reopen and dismissed his appeal. Groza then petitioned this court for review of the Board's decision. We deny the petition.

I.

In 1981, at the age of eighteen, Groza fled Romania. He escaped to Yugoslavia, where the authorities jailed him for a brief period before transferring him to a refugee camp in Italy. The United States then granted Groza refugee status, allowing him to enter the country on August 27, 1981. On April 13, 1983, Groza was granted lawful permanent residence status retroactive to his date of arrival in this country.[1] On August 19, 1983, a Cook County Grand Jury returned a multiple-count indictment against Groza, charging him with, *inter alia,* rape, aggravated battery, and aggravated kidnapping. On January 22, 1985, after a bench trial at which Groza was represented by counsel, the court found Groza guilty of the aforementioned offenses and sentenced him to six years imprisonment.[2]

A.

On April 18, 1986, the I.N.S. issued an Order to Show Cause why Groza should not be deported pursuant to 8 U.S.C. § 1251(a)(4) on the basis of his having been convicted of a "crime involving moral turpitude." On December 8, 1987, Groza appeared before an Immigration Judge and conceded his deportability, but requested both asylum and withholding of deportation. The IJ conducted a hearing on the merits

---

1. 8 U.S.C. § 1159(a)(2) provides that a refugee who makes an application for and is granted permanent residence is to be regarded as "lawfully admitted for permanent residence as of the date of such alien's arrival into the United States."

2. The Board's decision incorrectly stated that Groza's conviction stemmed from a guilty plea. At oral argument, counsel for both parties expressed some uncertainty as to whether Groza had pleaded guilty or had gone to trial. The administrative record, however, is clear that Groza pleaded not guilty and was convicted by trial.

during which he took testimony from several witnesses on Groza's behalf and received into evidence Groza's petition for asylum and numerous documents relating to conditions in Romania. The witnesses stated that Groza had become more religious since his conviction and opined that he would face persecution for both his religious and anti-communist activities if he were returned to Romania. Groza testified about his religious activities, employment history, and marital status, and his criminal record. Groza stated that he and his wife, Lucha, were married in 1984, had a daughter born in 1985, and were separated at the time of the hearing. Groza testified extensively about the events leading to his conviction, and opined that he was found guilty because "the judge believed [the victim's] testimony instead of mine." At the conclusion of the hearing, the IJ issued a comprehensive oral decision. The IJ found that Groza was statutorily ineligible for withholding of deportation pursuant to 8 U.S.C. § 1253(h)(2)(B) on the basis of the "particularly heinous violent crime" of which he had been convicted. Although the IJ concluded that Groza had a well-founded fear of persecution and was qualified as a refugee as defined in 8 U.S.C. § 1101(a)(42), he nevertheless denied Groza's application for asylum as a matter of discretion. In so doing, the IJ found that the nature and seriousness of Groza's crimes, along with a lack of remorse or contrition for having committed them, outweighed the equities in his favor.

### B.

On May 23, 1988, Groza appealed the decision of the IJ to the Board of Immigration Appeals and requested sixty days to submit a brief. In his Notice of Appeal, Groza listed six allegations of error in the IJ's decision. On October 9, 1990, the Board informed Groza that he faced a December 10, 1990, deadline for submitting a brief. Groza did not meet this deadline, and, in fact, never did file a brief in support of his appeal. Rather, on December 11, 1990, Groza filed a Motion to Reopen his deportation proceedings in order to apply for relief under § 212(c) of the

Immigration and Nationality Act, 8 U.S.C. § 1182(c). At the same time, Groza asked that his appeal of the IJ's decision be held in abeyance pending the Board's decision on the Motion to Reopen. In support of his Motion to Reopen, Groza offered favorable letters from his parole officer and employer, copies of his income tax returns, and a record of his church offerings. He also argued that his deportation would cause "[p]sychological and emotional hardship" to his family members in the United States, including his young daughter (born in the United States), his lawful permanent resident parents and spouse (from whom he was separated), and a United States citizen brother. Finally, he introduced his employment record, length of residence in the United States, and "genuine rehabilitation" as "outstanding" equities favoring relief from deportation.

On February 1, 1993, the Board denied the Motion to Reopen for two reasons: (1) Groza had not presented sufficient equities to offset his extremely serious criminal record, and (2) Groza had satisfied § 212(c)'s seven-year statutory eligibility requirement only through deliberate delay by filing a meritless appeal of the IJ's decision. The Board also addressed its merits of Groza's appeal, upholding the IJ's discretionary denial of Groza's asylum request and affirming the IJ's ruling that Groza was statutorily ineligible for withholding of deportation.

### II.

Pursuant to 8 U.S.C. § 1105a(a)(1), we have jurisdiction to review final deportation orders of the Board of Immigration Appeals. Groza asks us to reverse the Board's decision denying (1) his Motion to Reopen deportation proceedings, (2) his request for asylum, and (3) his request for withholding of deportation.

### A.

Aliens who have been lawful permanent residents for seven years and whose deportations are based on certain specified grounds are statutorily eligible to apply for § 212(c) relief.[3] *Guillen–Garcia v. I.N.S.*,

---

**3.** Under § 212(c) of the Immigration Act:

> Aliens lawfully admitted for permanent resident status who temporarily proceeded abroad

999 F.2d 199, 203 (7th Cir.1993); *Akinyemi v. I.N.S.*, 969 F.2d 285, 288 n. 1 (7th Cir. 1992). Statutory eligibility for § 212(c) relief does not, however, establish an entitlement to a waiver of deportation. *Guillen–Garcia*, 999 F.2d at 203; *Cordoba–Chaves v. I.N.S.*, 946 F.2d 1244, 1247 (7th Cir.1991). The Board may deny a motion to reopen on at least three independent grounds: (1) failure to establish a prima facie case for the underlying relief sought; (2) failure to introduce new, material evidence that was previously unavailable and therefore not considered in the initial review; and (3) a determination that even if either or both of the two previous conditions existed, the movant would not be entitled to discretionary relief. *Johnson v. I.N.S.*, 962 F.2d 574, 576 (7th Cir.1992). Whether an alien will receive discretionary relief under § 212(c) is in the hands of the Attorney General (or her designate), and the alien bears "the burden of demonstrating that his application warrants favorable consideration." *Cordoba–Chaves*, 946 F.2d at 1247 (citing *Matter of Marin*, 16 I & N Dec. at 583).

As we have noted on occasion, the narrow scope of our review of final Board orders—which the Supreme Court has equated with the review of petitions for rehearing and motions for new trials on the basis of newly discovered evidence, *I.N.S. v. Abudu*, 485 U.S. 94, 107, 108 S.Ct. 904, 913, 99 L.Ed.2d 90 (1988)—presents a difficult challenge for deportable aliens. *See e.g., Johnson*, 962 F.2d at 577. We review discretionary denials for an abuse of discretion, and we may reverse only if the decision "was made without a rational explanation, ... inexplicably departed from established policies, or rested on an impermissible basis." *Cortes–Castillo*, 997 F.2d at 1203 (citing *Espinoza v. I.N.S.*, 991 F.2d 1294, 1297 (7th Cir.1993)).

The Board need not "write an exegesis on every contention" raised by the petitioner; *Akinyemi*, 969 F.2d at 289, rather, the Board must "engage in a careful, individualized review of the evidence," *Kaczmarczyk v. I.N.S.*, 933 F.2d 588, 595 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991), and render an opinion that enables "a reviewing court to perceive that it has heard and thought and not merely reacted." *Akinyemi*, 969 F.2d at 289 (quoting *Becerra–Jimenez v. I.N.S.*, 829 F.2d 996, 1000 (10th Cir.1987)). In undertaking our review, we may not reweigh the evidence and substitute our own judgment for that of the Board. *Guillen–Garcia*, 999 F.2d at 204.

In this case, the Board acknowledged that Groza had become statutorily eligible for § 212(c) relief during the pendency of his appeal, but determined that even if Groza could meet the threshold requirements (prima facie case or new evidence), he would not be entitled to relief as a matter of discretion for two reasons. First, applying the now-familiar balancing approach set forth in *Matter of Marin*, 16 I & N Dec. 581 (BIA 1978), the Board found that Groza had not presented sufficient equities "to offset his extremely serious criminal record." Dec. at 4. Second, "[a]s an additional basis" for denying the Motion to Reopen, the Board concluded that Groza's appeal of the IJ's decision was "meritless" and had been filed for the purpose of forestalling his deportation. *Id.* Groza vigorously disputes the Board's characterization of his appeal as meritless and its suggestion that he appealed solely for the purpose of delaying his departure from this country. He also argues that the Board erred in applying the *Marin* factors by misstating the relevant facts and failing to consider all of the positive equities.

voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provision of paragraphs (1)–(25), (30), and (31) of subsection (a) of this section. Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title.

8 U.S.C. § 1182(c). Although § 212(c) literally refers only to the excludability of aliens seeking readmission to the United States, it has been interpreted to apply also "to lawful permanent residents who have not left the United States but [who] meet the seven-year requirement and face deportation." *Henry v. I.N.S.*, 8 F.3d 426, 430 n. 4 (7th Cir.1993) (citing *Cortes–Castillo v. I.N.S.*, 997 F.2d 1199, 1202 (7th Cir.1993)).

We begin our review by considering the Board's determination that Groza would not be entitled to a favorable exercise of discretion under the *Marin* balancing approach even if he could satisfy the prima facie case requirement or had new evidence to present. Under *Marin*, the Board must weigh "the social and humane considerations in the alien's favor against any adverse factors that demonstrate his or her undesirability as a permanent resident in the United States." *Henry*, 8 F.3d at 432 (citation omitted). We have noted on numerous occasions that factors favoring relief include:

> [F]amily ties within the United States, residence of long. duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character (e.g. affidavits from family, friends, and responsible community representatives).

*See e.g. Cortes–Castillo*, 997 F.2d at 1202 (citing *Marin*, 16 I & N Dec. at 584–585). Adverse factors include the nature and underlying circumstances of the exclusion ground at issue, any additional significant violations of this country's immigration laws, the nature, recency, and seriousness of a criminal record, and any other evidence of an alien's bad character or undesirability as a permanent resident. *Id.* (citing *Marin*, 16 I & N Dec. at 584). Where particularly serious negative factors exist, the Board may require a heightened showing of favorable evidence that rises to the level of "unusual or outstanding equities." *Henry*, 8 F.3d at 433 ("[W]e have consistently upheld such a requirement where deportability is based on a serious drug offense."); *Cortes–Castillo*, 997 F.2d at 1202 (citing serious drug conviction, especially one relating to selling or trafficking, as an example); *Akinyemi*, 969 F.2d at 288; *Cordoba–Chaves*, 946 F.2d at 1247. Finally, even a showing of outstanding equities does not compel relief; the Board may determine, in its discretion, that the seriousness of an offense or other negative factors outweigh even the most unusual or exceptional equities. *Guillen–Garcia*, 999 F.2d at 203–204; *Akinyemi*, 969 F.2d at 288.

In light of the seriousness of Groza's convictions for rape, aggravated battery, and aggravated kidnapping, the Board required Groza to show "unusual or outstanding equities" to justify relief. The Board observed:

> The respondent contends that he has presented "outstanding" equities in support of his motion to reopen. We do not consider his period of residence to constitute an outstanding equity, though, considering that he committed his very serious criminal offenses only 4 months after he was admitted as a lawful permanent resident. Further, the respondent was incarcerated for more than 2-and-½ years following his admission for lawful permanent residence. With respect to his family ties, the respondent indicates in his motion that he and his wife are now separated. He has provided no information concerning the extent to which his United States citizen daughter is reliant upon him for emotional and financial support. While the respondent's family ties constitute a significant equity in his application for section 212(c) relief, we are not persuaded that these ties are an "outstanding" equity. The respondent has apparently been law-abiding and employed since his release from prison, yet we do not find his limited evidence of rehabilitation, nor any of his other equities, to be sufficient to offset his extremely serious offenses of rape, aggravated battery, and aggravated kidnapping. *Matter of Edwards, supra.* Because we conclude that the respondent's section 212(c) request would properly be denied in the exercise of discretion, his motion to reopen to apply for that relief will be denied.

Dec. of the Board of Appeals, at 3. In his brief and at oral argument, Groza asserted that the Board erred both in its findings and conclusions. Perhaps most importantly, Groza maintains that the Board should not have required a showing of unusual or outstanding equities because the conviction at the root of Groza's deportation problem was based on a

single event that took place over a decade ago. In addition, Groza insists that the Board erroneously calculated the temporal relationship between the date of Groza's admission to the United States as a permanent resident and the date of his criminal offenses. Finally, Groza contends that the Board failed to consider all of the equities in favor of relief, especially in regard to the level of support he provides for his daughter and the extent of his rehabilitation.

■ In sorting through Groza's arguments, we note first our agreement with the Board that a "single serious crime" may constitute "serious criminal misconduct" for which an alien can be compelled to present "unusual or outstanding equities" as a counterbalance. *See Matter of Edwards*, Interim Dec. 3134 (BIA 1990). Here, we find serious criminal misconduct on the basis of a single criminal episode that gave rise to convictions for three separate crimes involving the use of force against the victim's will (rape, aggravated battery, and aggravated assault). Thus, the Board properly required a showing of unusual or outstanding equities. Groza's argument about the time gap between his arrival in the United States and his criminal activity also need not detain us long. Groza raises a technical point that does not, in our view, undermine the strength of the Board's contention.[4]

■ We turn finally to Groza's claim that the Board erroneously discounted the equities in favor of granting him relief. We find no merit to Groza's argument that the Board reached an incorrect conclusion as to the extent to which Groza's daughter relied on him for support. We have reviewed the pages of the record on which Groza and his then-wife testified as to Groza's financial support of the child. The relevant testimony is general in nature, and, at best, tends to establish the extent of Groza's support in a vague and imprecise manner. The Board's disposition of the matter of Groza's rehabilitation, however, is not as clear cut. We have consistently stated that rehabilitation is an important factor to be considered in exercising discretion in a case of an applicant who has a criminal record. *See e.g., Cortes–Castillo*, 997 F.2d at 1203; *Vergara–Molina v. I.N.S.*, 956 F.2d 682, 685 (7th Cir.1992). Indeed, in recent years, we have remanded cases to the Board where we have found their decisions deficient in addressing the issue of rehabilitation. *See Guillen–Garcia*, 999 F.2d at 205; *Cortes–Castillo*, 997 F.2d at 1203; *Akinyemi*, 969 F.2d at 289–290. Here, the Board's rather nebulous reference to "limited evidence of rehabilitation," Dec. at 4, without explanation or elaboration, certainly complicates our review. *See Vergara–Molina*, 956 F.2d at 685 n. 4 ("We emphasize that our review of Board decisions is greatly aided—and expedited—when we have the benefit of well-structured, plenary exposition of the Board's view."). Of the factors Groza brings to our attention, the Board's opinion mentions only Groza's continued employment, support of and ties to his family, and lack of additional criminal activity. While, as noted in *Vergara–Molina*, the Board need not mention every relevant fact in its opinion, *id.* at 685, the Board's failure to comment on Groza's religious activities, his parole officer's report, or his retrospective appraisal of his conviction is rather glaring, though, as the government's brief points out, the last of these putatively mitigating factors may cut both ways.[5] In sum, however, we find that the Board focused on the strongest evidence of rehabilitation and judged it insufficient to offset the seriousness of his criminal record. As in *Vergara–Molina*, the Board's opinion,

4. Groza was admitted as a refugee on August 27, 1981, and became a permanent resident on August 15, 1983. As Groza correctly notes, the Immigration and Nationality Act provides a retroactive adjustment of a former refugee's status so that a refugee who is granted permanent residence is regarded as "lawfully admitted for permanent residence as of the date of such alien's arrival into the United States." 8 U.S.C. § 1159(a)(2). At the same time, however, it seems to us that the essence of the Board's comment—that Groza committed his criminal offenses only four months after the adjustment in his status—though perhaps imprecisely stated, remains valid.

5. On the one hand, Groza testified that "he was sorry" and had "learned his lesson," while, on the other hand, he did not acknowledge that he committed the crimes for which he was convicted. Rather, he stated that he was convicted because the judge found the victim's story more credible than his story.

"when assessed as a whole, demonstrates adequately, albeit imperfectly, that the Board heard and thought about the relevant factors." *Id.* at 685. Accordingly, we conclude that the Board did not abuse its discretion in denying Groza's motion to reopen.[6]

### B.

■■■■ We next consider whether the Board erred in affirming the IJ's denial of Groza's request for asylum, despite his finding that Groza did have a well-founded fear of persecution.[7] Under § 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158, an alien granted asylum is permitted to remain in the United States and may even become eligible for permanent residence in one year's time. *See Garcia v. I.N.S.,* 7 F.3d 1320, 1321 (7th Cir.1993). The demonstration of a "well-founded fear of persecution" if returned to one's home country is a necessary but not sufficient condition of qualifying for refugee status. *See* 8 U.S.C. § 1158; *I.N.S. v. Cardoza–Fonseca,* 480 U.S. 421, 428, 107 S.Ct. 1207, 1211, 94 L.Ed.2d 434 (1987); *Garcia,* 7 F.3d at 1321. Even upon such a showing, the Attorney General (or her designate) may, in her discretion, deny relief. *See Cardoza–Fonseca,* 480 U.S. at 428 n. 5, 107 S.Ct. at 1211 n. 5. As the Supreme Court has stated, the statute simply creates "a discretionary mechanism which gives the Attorney General the authority to grant the broader relief of asylum to refugees," *id.* at 441, 107 S.Ct. at 1218, though it does not mandate such relief under any particular circumstances. Aliens who "can only show a well-founded fear of persecution are not *entitled* to anything"; they are merely "*eligible* for the discretionary relief of asylum." *Id.* at 444, 107 S.Ct. at 1219 (emphasis in original).

■■■ As with motions to reopen, we review the Board's denial of asylum for an abuse of discretion, meaning that we will reverse only if its decision "was made without a rational explanation, ... inexplicably departed from established policies, or rested on an impermissible basis." *Cortes–Castillo,* 997 F.2d at 1203. In *Shahandeh–Pey v. I.N.S.,* we elaborated a bit on this standard, stating that "[a] decision that does not reflect, even at some minimal level, consideration of important aspects of an individual's claim is one made, for all a reviewing court can know, 'without rational explanation.'" 831 F.2d 1384, 1389 (7th Cir.1987) (finding that the Board abused its discretion by either ignoring or overlooking the petitioner's most compelling equity—namely, the persecution he asserted he would suffer if deported).

■■■ The Board evaluates asylum requests within the same *Marin* framework it uses to decide motions to reopen. *See Shahandeh–Pey,* 831 F.2d at 1387. Groza contends that the Board abused its discretion by inadequately evaluating, discussing, and deliberating all the relevant factors. Of course, Groza's failure to articulate detailed objections to the IJ's findings, in the form of a brief filed with the Board prior to their deci-

---

**6.** Thus, we need not decide whether the Board's finding that Groza's appeal was meritless was a sufficient, independent basis for denying the motion. We are troubled, however, by the Board's characterization of the appeal as meritless. In *I.N.S. v. Rios–Pineda,* the Supreme Court stated that "[t]he purpose of an appeal is to correct legal errors which occurred at the initial determination of deportability; it is not to permit an indefinite stalling of physical departure in the hope of eventually satisfying legal prerequisites." 471 U.S. 444, 451, 105 S.Ct. 2098, 2103, 85 L.Ed.2d 452 (1985). After reviewing Groza's Notice of Appeal, we find that Groza presented colorable, though not ultimately persuasive, legal arguments to support his view that the IJ erred; hence, his appeal is not *meritless.* In defending the Board's decision to label Groza's appeal meritless, the government alludes to the fact that Groza had ample opportunity to file a brief in support of his appeal but never did so. We, too,

are bothered by Groza's dereliction, but we think it more accurate to chastise Groza for a possible abuse of the Board's process than to pin a label to his appeal that disparages its substantive merits. We are not suggesting that the Board must comb the record for meritorious claims, or that the Board may not require, as we do, that litigants not only raise, but also support their arguments, both factually and legally. We do note, however, that failure to do so does not implicate the merits of a litigant's case; it merely results in waiver.

**7.** Though the Board noted that Groza's fear of persecution "*appears* to have diminished considerably" in view of the fall of the Ceausescu regime in Romania, for purposes of this appeal we will presume that the IJ's finding remains valid.

sion, considerably weakens the force of his challenge to the Board's disposition of his case. In the absence of particularized grievances, we do not find it surprising that the Board simply reviewed the IJ's decision and noted that it "reflects that [the IJ] gave careful consideration to all the relevant factors in the respondent's application." Dec. at 5. We agree with the Board's conclusion that the IJ's decision is wholly supported by the record. After determining that Groza faced a "well-founded fear of persecution" in Romania, the IJ conducted a full and fair hearing of the merits of Groza's request for relief from deportation. The IJ took extensive testimony and reviewed documentary evidence, excluding only those witnesses whose statements he felt would merely be cumulative. Finally, the IJ's fourteen-page decision demonstrated that he had "heard and thought and not merely reacted." *Akinyemi*, 969 F.2d at 289 (citation omitted). Had Groza raised substantive objections to the IJ's handling of his asylum request (as distinct from his motion to reopen) we would have expected the Board, as a matter of course, to address them in discharging its reviewing function. By failing to seriously contest his asylum claim by filing a brief, Groza, in effect, tossed all of his eggs into the motion to reopen basket. In this circumstance, we cannot expect or require the Board to do more than it did.

### C.

■ Groza finally contends that the Board erred in denying his request for withholding of deportation. As we explained in *Garcia*, withholding of deportation is a narrower remedy than asylum, *see* 8 U.S.C. § 1253(h), that shields an alien from forced repatriation to a particular country, but does not preclude deportation if he would not face persecution elsewhere. 7 F.3d at 1322. An alien qualifies for this relief if he faces a

"clear probability of persecution" if returned to his home country. *See I.N.S. v. Stevic*, 467 U.S. 407, 430, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984). This standard is more demanding than that required for asylum, but an alien who makes the required showing is entitled to relief unless he falls within one of the statutory bars. *Garcia*, 7 F.3d at 1322. The bar at issue both in *Garcia* and here denies eligibility for withholding of deportation if the Attorney General determines that "the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." 8 U.S.C. § 1253(h)(2)(B).

■ Like the petitioner in *Garcia*, Groza insists that he may not be automatically barred from the relief of withholding of deportation for having committed a "particularly serious crime" without a separate determination of whether he constitutes a "danger to the community." We addressed precisely this question in *Garcia*, interpreting "the grammar of section 243(h)(2)(B) to establish a 'cause and effect relationship' between the clauses whereby conviction of a particularly serious crime indicates that the alien offender represents a danger to the community." 7 F.3d at 1323 (citations omitted). As our colleague on the Eleventh Circuit has written, "If Congress had intended that the director make two separate findings, it could have easily manifested its intent by simply connecting the two clauses with the conjunction 'and.'" *Zardui–Quintana v. Richard*, 768 F.2d 1213, 1222 (11th Cir.1985) (Vance, J., concurring in the result). Thus, reading the text of section 243(h)(2), we held that "Congress intended to bar aggravated felons absolutely from receiving withholding of deportation." *Garcia*, 7 F.3d at 1324. Groza does not contest the Board's finding that he committed a "particularly serious crime," nor could he.[8] On that basis alone, the Board

---

**8.** For purposes of § 1253(h)(2)(B), "an alien who has been convicted of an aggravated felony shall be considered to have committed a particularly serious crime." § U.S.C. § 1253(h)(2). The Immigration and Nationality Act defines an "aggravated felony" to include "any crime of violence (as defined in section 16 of Title 18, not including a purely political offense) for which the term

of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years ..." 8 U.S.C. § 1101(a)(43). Under Title 18, a "crime of violence" includes "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, ..." 18 U.S.C. § 16(a). The trial court found Groza guilty of rape, aggravated

properly found Groza statutorily ineligible for the relief of withholding of deportation.

### III.

"Deportation is always a harsh measure," *Cardoza–Fonseca*, 480 U.S. at 449, 107 S.Ct. at 1222, and here, as often is the case, it may well be a more severe punishment than that received by Groza for his criminal convictions. *See People v. Correa*, 108 Ill.2d 541, 92 Ill.Dec. 496, 500, 485 N.E.2d 307, 311 (1985). The laws of the United States, however, require aliens—even those with permanent resident status—to refrain from committing serious crimes or face possible expulsion. Aliens who become subject to deportation "bear[ ] the burden of proving that [their] application merits a favorable exercise of discretion, which is an extraordinary act and a matter of grace." *Patel v. I.N.S.*, 738 F.2d 239, 242 (7th Cir.1984). "No one is entitled to mercy," *Achacoso–Sanchez v. I.N.S.*, 779 F.2d 1260, 1265 (7th Cir.1985), and the Board's unwillingness to dispense mercy in this case was not an abuse of discretion. The petition for review is DENIED.

battery, and aggravated kidnapping. Groza's conviction for rape, an offense that included as an element the use of force, Ill.Rev.Stat., Ch. 38, Sec. 11–1(a) (1983), resulted in a sentence of six years.